JOEL E. GILMAN *vs.* EASTERN RAILROAD CORPORATION.

A railroad corporation is not responsible to a person employed by it to repair its cars, for a personal injury arising from the negligence of a switchman, in failing properly to adjust a switch upon the track over which he is carried by the corporation, free of charge, between his home and the place of his work, provided the corporation has used due care in the selection of the switchman; but if the switchman was an habitual drunkard, and this fact was known or ought to have been known to the corporation, and the injury resulted from his intoxication, the corporation is responsible.

TORT to recc er damages for a personal injury.

At the trial in this court, before *Chapman,* J., the plaintiff in his opening stated that he expected to prove the following facts:

The plaintiff lived in East Boston, and was employed there by the defendants as a carpenter in their repair shop. They afterwards made a bargain with him by which he was to work for them in North Chelsea, which is about four miles from East Boston, in repairing gravel-cars, for a certain sum by the day, and to be carried between East Boston and North Chelsea in the morning, at noon, and after his work was ended at night, free of expense. Nothing was said as to how he should be carried, and he did not know. The plaintiff had no control whatever over the trains. On the day of the injury, which was several months after the parties had entered upon the execution of the contract, the plaintiff was carried from his work at noon to East Boston, upon a flat platform-car, having no seats, sides or railing, pushed by an engine, the tender of the engine being between the engine and the car; and when this train reached East Boston, the platform-car was detached from the tender, while the train was in motion, for the purpose of having the car switched off upon a side track and allowing the tender and engine to follow on a different track to the engine-house. To do this, it was necessary for the switchman to shift the track before the car arrived at the switch, and after this car had passed upon the side track to change the track back again so as to permit the tender and engine to pass upon the main track. The switchman employed by the defendants, when the car was in the proper place, failed to change the switch, but in attempting to do so left the switch about halfway between the two tracks, so that if the car had proceeded its whole length it would have run off the track and exposed the plaintiff to great injury. The brakeman, seeing this, immediately attempted to stop the car, to prevent its running off the track, and greatly and suddenly checked its speed, whereby the tender and engine came upon it, and the plaintiff, who was sitting upon the floor of the car, in the use of due care, was thrown therefrom upon the track, and the tender passed over his right leg, crushing it and rendering amputation necessary. The switchman had been employed at this switch by the defendants for two years immediately prior to said injury, and was of grossly intemperate habits and an habitual drunkard, and was

grossly intoxicated at the time of the accident, which was the reason why he could not change the switch, and so placed it that the car would have run off the track if it had not been stopped ; and, when first employed by the defendants, he had the reputation in the community of East Boston where he lived of being a man of grossly intemperate habits and an habitual drunkard, and while in their employment was drunk every night. The plaintiff, however, had no knowledge of the switchman or his habits till after the accident.

Upon this opening, the judge stated that he was in doubt whether, if these facts were proved, the plaintiff would be entitled to recover; and by consent of parties the case was reserved for the determination of the whole court.

*G. A. Somerby,* for the plaintiff. The defendants by express contract agreed to carry the plaintiff between East Boston and North Chelsea. On his passage between those places, he was not a servant of the defendants, but was a passenger. It was as if he had bought a season ticket. The terms of the contract exclude the idea that he was paid for taking any risk as a servant, engaged in the common purpose of running or managing the train. The defendants were bound to use ordinary care towards him, and failed to do so. The method of carrying him was unsafe, and the employment of a drunken switchman was criminal negligence. The misplacement of the switch was the proximate cause of the injury. *Sherman* v. *Favour,* 1 Allen, 191. *Lund* v. *Tyngsboro,* 11 Cush. 563. *Ingalls* v. *Bills,* 9 Met. 1. The cases heretofore decided in this state have no application to this case, because in each it was either expressly found that there was no contract on the part of the defendants to carry the plaintiff, or else it appeared that the plaintiff was injured without a want of ordinary care on the part of the defendants. See cases cited in the opinion, and also *Nolton* v. *Western Railroad,* 15 N. Y. 444 ; *Fifield* v. *Northern Railroad,* 42 N. H. 234; *Buzzell* v. *Laconia Manuf. Co.* 48 Maine, 113 ; *Mellors* v. *Shaw,* 1 Best & Smith, 437; *Roberts* v. *Smith,* 2 Hurlst. & Norm. 213; *Hutchinson* v. *York, &c. Railway,* 6 Railw. & Canal Cases, 588.

*J. G. Abbott & C. M. Ellis,* for the defendants. This case falls

within the well established rule that one servant of a corporation cannot recover against it for injuries sustained by reason of the carelessness of another servant. See cases cited in opinion. The switchman's fault was not the proximate cause of the injury; and if it were, the neglect in employing the switchman was the neglect of a fellow-servant, and the neglect of the switchman was also the neglect of a fellow-servant. Evidence, therefore, of the switchman's reputation would be incompetent.

GRAY, J.[*] The case presented by this report is to be determined by the application of rules now too well established to require an elaborate statement of the reasons on which they are founded, or an extended examination of the authorities by which they are supported.

A servant, by entering into his master's service, assumes all the risks of that service, which the master cannot control, including those arising from the negligence of his fellow-servants. In case of an injury to one servant by the negligence of another, it is immaterial whether he who causes and he who sustains the injury are or are not engaged in the same or similar labor, or in positions of equal grade or authority. If they are acting together under one master in carrying out a common object, they are fellow-servants. The master indeed is bound to use ordinary care in providing suitable structures, engines, tools and apparatus, and in selecting proper servants, and is liable to other servants in the same employment if they are injured by his own neglect of duty. But it makes no difference whether the master is an individual or a corporation; in either case, he is responsible to his servants for his own negligence, but not for that of their fellow-servants.

The first attempt to hold a master responsible to one servant for the negligence of another was made in England less than thirty years ago, and was defeated by the judgment of the court of exchequer. *Priestley* v. *Fowler*, 3 M. & W. 1. Not long afterwards a similar attempt was made in this court, with the like result, as announced in an elaborate opinion of the late

---

[*] BIGELOW, C. J. did not sit in this case.

chief justice. *Farwell* v. *Boston & Worcester Railroad,* 4 Met. 49. Many other cases followed in Great Britain, in which the English courts uniformly maintained the same doctrine, but the Scotch judges were less consistent. At last two cases were brought by appeal from the courts of Scotland to the house of lords, there argued by the ablest counsel, and after deliberate advisement and careful examination of all the English and Scotch cases and of the opinion of Chief Justice Shaw, decided, according to the unanimous opinion of Lords Cranworth, Chelmsford, Brougham and Wensleydale, in favor of the master, upon principles of general jurisprudence, applicable alike to England and Scotland. *Bartonshill Coal Co.* v. *Reid & McGuire,* 3 Macqueen, 266, 300. In the quaint phrase of the reporter, " Reid and McGuire were both victims of the same accident, which, though melancholy, has settled the law." Ib. 301, *n.*

In this court the rule has been upheld under a great variety of circumstances. A railroad corporation has been held not to be liable to an engineer on a train for an accident from the negligence of a switchman; *Farwell* v. *Boston & Worcester Railroad,* above cited; nor to one brakeman for the negligence of another on a different train; *Hayes* v. *Western Railroad,* 3 Cush. 270. So a woman working in a manufactory cannot maintain an action against the corporation owning it for an injury occasioned by the negligence of the superintendent. *Albro* v. *Agawam Canal Co.* 6 Cush. 75. A railroad corporation has been held not to be responsible in damages for an injury to an apprentice in its machine shop, while acting as fireman on a train, for a defect in a switch, where no want of ordinary care on the part of the corporation was shown; *King* v. *Boston & Worcester Railroad,* 9 Cush. 112; nor to a laborer, employed to repair the road-bed, while being carried to his place of work, by the negligence of those in charge of the train; *Gillshannon* v. *Stony Brook Railroad,* 10 Cush. 228; nor to a carpenter, carried over the railroad to repair its fences, bridges and switch frames, by negligence of the engineer, or of servants whose duty it was to inspect the axles of the cars; *Seaver* v. *Boston & Maine Railroad,* 14 Gray, 466.

These cases, especially those of *Gillshannon* ar.1 *Seaver*, cannot be distinguished in principle from the present. In each of those two, as in this, the plaintiff's work did not begin until his arrival at his destination ; and in this, as in those, the work was upon the structures, means or instruments with which the defendants were to carry on their business of common carriers, the workman paid nothing for his passage, and the object of the defendants in carrying him was to get him to his place of work. Risks from the negligence of a switchman, like those from the negligence of the engineer and other servants in charge of the train, must or should have been contemplated by the plaintiff as incident to the employment which he had undertaken. The case of *Russell* v. *Hudson River Railroad*, 17 N. Y. 134, is to the same effect. And the cases in the house of lords, above cited, were actions against a mining company for injuries occasioned to miners, who worked in the mine all day, by the negligence of the man who let them down in the morning and drew them up at night.

The plaintiff was therefore a fellow-servant of the switchman, and not entitled to recover of their common master for any injury occasioned by the negligence of the switchman or other servant in the same employment.

But it is quite as well settled, both in England and America, that a master is bound to use ordinary care in providing his structures and engines, and in selecting his servants, and is liable to any of their fellow-servants for his negligence in this regard. *Tarrant* v. *Webb*, 18 C. B. 797. *Bartonshill Coal Co.* v. *Reid*, 3 Macqueen, 272, 287, 288. *Ormond* v. *Holland*, El., Bl. & El. 102. *Weems* v. *Mathieson*, 4 Macqueen, 215. *Clarke* v *Holmes*, 7 Hurlst. & Norm. 937, affirming *S. C.* 6 Hurlst. & Norm. 349. *Keegan* v. *Western Railroad*, 4 Selden, 175. *Cayzer* v. *Taylor*, 10 Gray, 274. *Snow* v. *Housatonic Railroad*, 8 Allen, 441. The duty of selecting fit servants belongs to the master, whether the master is an ndividual or a corporation. The same tests of the liability of masters have been applied to corporations as to individuals in the English decisions above cited, and in our own cases, from *Farwell's* in the 4th of Metcalf

to *Snow's* in the 8th of Allen.  To vary the rule in the case of corporations, upon the ground that they must always act by ser-vants or agents, would be to exempt them from liability alto-gether.

The evidence offered by the plaintiff at the trial was compe-tent to show that the defendants knowingly, or in ignorance caused by their own negligence, employed an habitual drunkard as a switchman, and thereby occasioned the accident.  Of the sufficiency of this evidence a jury must judge.  If the plaintiff can satisfy them that such misconduct or negligence in the de-fendants caused the injury, and that he himself used due care, he may maintain his action.  ·  *Case to stand for trial.*