# Betham v. Philadelphia.

*Municipalities—Statutory duty—Liability for negligence.*

No duty has been imposed by statute upon the city of Philadelphia to protect the low-lying lands along the Delaware and Schuylkill rivers from overflow, or to drain the low-lying ground.

When a legal duty has been imposed by statute upon a municipal corporation, it is undoubtedly liable for injuries resulting from the neglect of that duty; but the duty imposed must be absolute or imperative, not such as, under a grant of authority, is intrusted to the judgment and discretion of the municipal authority, since a municipal corporation is not liable to an action for damages either for the nonexercise of, or for the manner in which, in good faith, it exercises discretionary powers of a public or legislative character.

If an act of a municipal corporation necessarily lies wholly outside of the general or special powers of the corporation as conferred by its charter or by statute, the corporation can in no event be liable in an action for damages whether it directly commanded the performance of the act, or whether it be done by its officers without its express command.

*Municipalities—Police power—Negligence.*

A municipality is not liable for the improper or negligent exercise of its police power.

*Municipalities—Powers—Negligence—Flooding lands—Police power.*

Where a municipality has no authority either by its charter or by statute to construct a dike or sluice on low lands within the city limits, and such authority has been expressly granted by statute to a meadow company, the city is not liable for a flooding of land caused by the negligent or im-

proper construction of a sluice by it; and this is the case whether the alleged negligent act was done by the city merely as a volunteer, or was done in the exercise of its police power.   In such a case article 16, section 8, of the constitution, providing for compensation for property injured by the exercise of the right of eminent domain, does not apply.

Argued Jan. 15, 1900.   Appeal, No. 307, Jan. T., 1899, by plaintiff, from order of C. P. No. 3, Phila. Co., Sept. T., 1897, No. 332, sustaining exceptions to report of referee in case of Robert Betham v. Philadelphia.   Before GREEN, C. J., MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ.   Affirmed.

Exceptions to report of referee, Robert W. Finletter, Esq.

The facts appear by the opinion of the Supreme Court.

The court in an opinion by McMICHAEL, J., sustained exceptions to the report.

*Errors assigned* were in sustaining exceptions to referee's report.

*Michael J. Ryan,* with him *George McGowan,* for appellant. —It will not be pretended that a court of equity would have restrained the defendant from prosecuting the work of draining the lands and building the sluice, and it is respectfully submitted that for its negligent acts in so doing whereby the innocent plaintiff has been made to suffer, the city should be held liable: Allentown v. Kramer, 73 Pa. 406; Torrey v. Scranton City, 133 Pa. 173; Blizzard v. Borough of Danville, 175 Pa. 479.

It is respectfully submitted that it is immaterial whether the city had authority or not.   This is an action in tort and not upon a contract.   The city undertook to perform the work and did it negligently.   By what authority can the city be held exempt from the consequences of its wrong?   Jones on Negligence of Municipal Corporations p. 35; N. Y., L. E. & W. R. R Co. v. Haring, 47 N. J. Law, 137; Hutchinson v. Western & Atlantic R. R. Co., 53 Tenn. 634; Salt Lake City v. Hollister, 118 U. S. 256; Dillon on Municipal Corporations, sec. 976.

Aside from all other questions it is respectfully contended that the liability of the city in this case may be founded directly upon the broad words of the constitution, article 16, section 8:

Butchers' Ice & Coal Co. v. Philadelphia, 156 Pa. 54; In re Walnut Street Bridge, 191 Pa. 153.

*Joseph W. Catharine*, with him *Leonard Finletter* and *James Alcorn*, assistant city solicitors, and *John L. Kinsey*, city solicitor, for appellee.—The so-called "public work" was not a sewer, surface or otherwise, as claimed by the appellant. It was not a part of the sewerage system of Philadelphia, nor was it connected, directly or indirectly, with said system. It was in no sense a "public work" within the legal definition of the term.

The construction of the sluice was not within the scope of the municipal authority: Grant v. Erie, 69 Pa. 420; Carr v. Northern Liberties, 35 Pa. 324; Fair v. Philadelphia, 88 Pa. 309; Pittsburg v. Grier, 22 Pa. 54; Philadelphia v. Collins, 68 Pa. 106; Philadelphia v. Gilmartin, 71 Pa. 148; Allegheny City v. McGlurkan, 2 Harris, 81; Salt Lake City v. Hollister, 118 U. S. 256; First National Bank v. Graham, 100 U. S. 699; P. W. & B. R. R. Co. v. Quigley, 21 Howard, 202; Merchants Nat. Bank v. State Nat. Bank, 10 Wall. 604; Thayer v. Boston, 19 Pickering, 511; North Penn. R. R. Co. v. Stone, 3 Phila. 421; Winpenny v. Philadelphia, 65 Pa. 135; N. Y., L. E. & W. R. R. Co. v. Haring, 47 N. J. Law, 137; Hutchinson v. Western & Atlantic R. R. Co., 53 Tenn. 634; Greenwood v. Town of Westport, 60 Fed. Repr. 560; Dillon on Mun. Corp. (4th ed.) sec. 89; Thomson v. Lee County, 3 Wall. 327; Thomas v. Richmond, 12 Wall. 349; Dalrymple v. Wilkes-Barre, 2 Luz. Reg. 39; Wimer v. Worth Township, 104 Pa. 320; Shroder v. Lancaster, 6 Lan. Bar. 201; Charles River Bridge v. Warren Bridge, 11 Peters, 544; Perrine v. Chesapeake & Delaware Canal Co., 9 How. 172.

The authority having been granted to the Meadow Company in express terms, it alone has authority to construct and maintain the works: Phila. v. Ward, 174 Pa. 51.

In the absence of an obligation upon the city to plan, construct and maintain the work, the city would not be required to do it; nor would it be liable if after having constructed the work it permitted it to become valueless for the purpose of its construction: McDade v. Chester, 117 Pa. 414; Cavanagh v. Boston, 139 Mass. 426; Wheeler v. Essex Public Board, 39 N. J. Law, 291; Smith v. City of Rochester, 76 N. Y. 506.

The work could lawfully be done by the city only in the exercise of the police power vested in the municipality as a political subdivision of the state : Scott v. Philadelphia, 81 Pa. 86 ; Rutherford v. Maynes, 97 Pa. 78 ; Wurts v. Hoagland, 114 U. S. 610 ; Tidewater Co. v. Coster, 3 C. E. Green, 518 ; O'Reiley v. Kainkakee Valley Draining Co., 32 Indiana, 169 ; State v. Blake, 7 Vroom, 447 ; State v. Newark, 3 Dutch. 194 ; Dillon on Mun. Corp. sec. 975 ; Elliott v. Phila., 75 Pa. 347 ; Boyd v. Ins. Patrol, 113 Pa. 270 ; McDade v. Chester, 117 Pa. 414.

If not in the exercise of police power, the work was done as a mere volunteer without authority in relief of the Meadow Company, under whose control it had remained as a completed work for many months prior to the accident : Wharton on Negligence (2d ed.), sec. 438 ; Curtin v. Somerset, 140 Pa. 70 ; First Congregation v. Smith, 163 Pa. 561.

OPINION BY MR. JUSTICE BROWN, May 29, 1900 :

The plaintiff below brought suit to recover from the city of Philadelphia for losses sustained by the flooding of lands which he occupied in the lower portion of the city, commonly known as the "Neck." His property was part of a large tract, bounded on the east and south by the Delaware river, and on the west by the Schuylkill, and was from four to six feet below high tide level. Artificial banks had, for many years, protected this and other lands in the locality from the overflowing water of the rivers, and sluices and canals formed parts of a system for such protection and for draining the low-lying ground. On August 1, 1897, one of these sluices blew out, and the land of the plaintiff was overflowed. His crops and other property were destroyed, and, alleging that the loss sustained was due to the city's negligence, he brought this suit against it. The cause was not tried before a jury, but submitted to a referee under the act of May 14, 1874, whose findings of fact were as follows :

"1. That for many years, the lower portion of the city of Philadelphia, comprising that section now embraced within the boundaries of the first, twenty-sixth, thirty-sixth and thirty-ninth wards, and bounded on the east and south by the Delaware river, and on the west by the Schuylkill river, had been drained.

into and protected from overflow from the said rivers, by a system of sluices and canals.

" 2. That the particular locality in which was situated the farm of the plaintiff was protected from any overflow from the Delaware river by a sluice maintained by the city of Philadelphia, defendant, which for at least eighteen years had worked successfully.

" 3. That, for public municipal purposes, the city of Philadelphia, the defendant, undertook to, and did, tear out, remove and destroy said sluice, and undertook to, and did, build the sluice whose improper design and construction are complained of, in its place.

" 4. That, on December 31, 1895, an ordinance was passed by the select and common councils of said city of Philadelphia, defendant, and approved by the mayor thereof, by which an appropriation of $12,328 was made to the bureau of highways of the department of public works, to be expended in the improvement of waterways.

" 5. That, on September 21, 1896, in pursuance of said ordinance, the city of Philadelphia, defendant, entered into a contract, a copy of which is attached to this report, with one John L. Grim, whereby said Grim was to furnish all the materials and perform all the labor required for improving the waterways in the first ward of the city of Philadelphia, in accordance with certain plans and specifications thereto attached.

" 6. That said plans and specifications were prepared by the bureau of surveys of the department of public works of the said defendant, and that by both contract and specifications, a copy of which is attached to this report, the supervision and control of every part of said work, both as to the mode of construction and the quality of materials to be used were reserved, from its beginning to its completion, to the city of Philadelphia, the defendant, and that its agents and representatives (its inspectors of the bureau of highways) of the department of public works, did actually undertake its supervision and control.

" 7. That, in accordance with said authority from said defendant, the said contractor began the work of tearing out the sluice which had existed successfully for at least eighteen years, and the building of a new and differently constructed sluice.

" 8. That said work was commenced by him early in October, 1896, and was completed by him early in the year 1897, when it was accepted from him by the city, and the last payment was made to him on June 30, 1897.

" 9. That the designs and plans furnished by the city of Philadelphia, and upon which the said sluice was constructed, were defective, in the following particulars, among others: (*a*) In providing a too rigid foundation for the sluice box to rest upon, whereby the mud was prevented from making its natural settlement without leaving dangerous spaces under the box. (*b*) In providing an overhanging ledge at the top of the foundation, thereby preventing the mud from settling in one mass, and thus leaving spaces under the ledge. (*c*) In want of uniformity in the length of the pilings, rendering the foundations uneven as to settlement.

" 10. That the said sluice was defectively constructed. (*a*) That the wooden portion of the foundation was defective, the sheet pilings thereof being improperly and negligently driven in such manner as to leave cracks and holes and splintered edges and tops. (*b*) The mud underneath the sluice box and upon which it should rest, and into which it should settle was of inferior, thin and watery character, and was not puddled or rammed, or made of the texture and consistency required by the specifications.

" 11. That all of these various defects, both as to the plans and manner of construction, and the defective material and improper use thereof in the building of the sluice had been repeatedly brought to the notice of the official representatives of the defendant for several months before the sluice blew out.

" 12. That the sluice, so improperly planned and constructed by the city of Philadelphia, defendant, blew out on the 1st day of August, 1897.

" 13. That at the time of the said blowing out, the sluice was, and had been for at least one month, in the absolute control of the defendant, and that it was built under its constant supervision and by its direction.

" 14. That, in consequence of the breaking of the sluice, the land of the plaintiff was overflowed, and the crops and other property of the plaintiff destroyed.

" 15. That said breaking of the sluice and the consequent

overflowing of the plaintiff's land and the destruction of his crops and other property was the direct result of the defendant's negligence in planning, constructing and maintaining an unsafe, improper and defective sluice or dike.

" 16. That after the sluice had passed into the possession and absolute control of the city of Philadelphia, the defendant failed to repair it, although the said city had notice, through its lawful agents, that said sluice was defective and out of repair.

" 17. That, in consequence of said negligence, Robert Betham has suffered damages to the amount of $3,530.60."

In the foregoing findings, it does not appear that the sluice, whose blowing out caused the injury complained of by the plaintiff, was a part of the sewerage system of Philadelphia, or that it was connected with the same. The plaintiff's contention, however, is, according to his statement filed, that sometime before his land was flooded, it had become, and continued to be, the duty of the city to construct and maintain the sluice "in a careful and prudent manner, and to make repairs thereto in a skillful and proper manner so as to maintain a thorough and reasonable system of drainage, in order that damage might not ensue;" and his cause of complaint, as set forth, is, that this duty was so negligently and carelessly discharged, that the injuries resulted to him, for which the city must make him compensation.

The argument in this case was elaborate, and the discussion of the principles involved took an extended range; but we are persuaded upon due consideration, that the reasons for our judgment can be briefly stated. No duty had been imposed by statute upon the city of Philadelphia to either protect the land of plaintiff and the meadow lands, of which it formed a part, from the overflow of the river, or to drain the low-lying ground. If such duty had been imposed, and the injuries suffered by plaintiff were due to a neglect to properly discharge it, the city undoubtedly would be liable. When a legal duty· has been imposed by statute upon a municipal corporation, it is undoubtedly liable for injuries resulting from the neglect of that duty; in such case it stands on the same footing in respect to negligence as a purely private corporation or an individual: Erie City v. Schwingle, 22 Pa. 388; Dillon, Mun. Corp. sec-

tions 961–965. But the duty imposed must be absolute or imperative, not such as, under a grant of authority, is intrusted to the judgment and discretion of the municipal authorities; for it is a well settled doctrine that a municipal corporation is not liable to an action for damages either for the nonexercise of, or for the manner in which, in good faith, it exercises discretionary powers of a public or legislative character: Dillon, Mun. Corp. section 949. It is certainly unnecessary to cite further authorities in support of a principle so well settled; indeed, we do not understand the general doctrine to be denied, but it is argued that it is inapplicable to the case now in hand: McDade v. Chester City, 117 Pa. 414. The city contended, before the referee, that it was not liable, because it was under no duty to construct and maintain the sluice, and, while he did not distinctly find that there was no such duty on its part, he did hold that this reason, urged by the city, could be assumed to be correct, and that the plaintiff had "not founded his case upon any such claim." We have quoted from the statement, in which the claim is so apparently made. We concur with the referee that it can be assumed to be correct that it was not the duty of the city of Philadelphia to construct or maintain the sluice in question, and that no liability had attached to it from failure to properly discharge an imposed obligation.

If there is no liability on the part of the city, due to its failure to properly discharge a duty imposed upon it, is it liable because, in the language of the referee, "the city of Philadelphia, having undertaken to perform the work of planning, constructing and maintaining the sluice or dike, was bound to plan and construct it properly, and to maintain it in good condition and repair, and failure to do so renders the city liable in damages?" If what the city did was done within its corporate authority, if it had the power to do what it undertook to do, and, in the exercise of that authority, or the execution of that power, it was negligent in the construction or maintenance of the sluice, and injury resulted it would be liable: Grant v. City of Erie, 69 Pa. 420; Allentown v. Kramer, 73 Pa. 406. "The rule of law is a general one that the superior or employer must answer civilly for the negligence or want of skill of his agent or servant in the course or line of his employment, by which another, who is free

from contributory fault, is injured. Municipal corporations, under the conditions herein stated, fall within the operation of this rule of law, and are liable, accordingly to civil actions for damages when the requisite elements of liability coexist. To create such a liability it is fundamentally necessary that the act done which is injurious to others must be within the scope of the corporate powers as prescribed by charter or positive enactment. In other words it must not be ultra vires in the sense that it is not within the power or authority of the corporation to act in reference to it under any circumstances. If the act complained of necessarily lies wholly outside of the general or special powers of the corporation as conferred by its charter or by statute, the corporation can in no event be liable to an action for damages, whether it directly commanded the performance of the act, or whether it be done by its officers without its express command; for a corporation cannot of course be impliedly liable to a greater extent than it could make itself by express corporate vote or action: " Dillon on Mun. Corp. (4th ed.) sec. 968. In Cavanagh v. Boston, 139 Mass. 426, the plaintiff was the owner of an island and the flats adjacent thereto. It being alleged that certain other flats, in consequence of being left bare at low tide, gave forth an offensive odor, the city council directed a dam to be built across the flats and upon part of the island owned by the plaintiff, by driving pile sheeting into the flats and island, and with gates in the part known as Pile Island Channel, which adjoined said flats. By reason of the omission properly to ballast said dam, the gates were washed away, and the dam was weakened, in consequence of which the property of plaintiff was injured. Verdict was directed for defendant. On appeal, ALLEN, J., said: " The difficulty with the plaintiff's case is, that neither the board of health nor the city government had any authority to abate the nuisance in the manner which was adopted. That manner was by the erection of a dam, the easterly portion of which was built across the flats and upon the upland of the plaintiff, for the purpose of raising the water so as to flow over other flats away from the flat of the plaintiff, the plaintiff's evidence tending to show that no nuisance existed on their own flats. This was an occupation of the plaintiff's land which the city had no power to make without the plaintiff's consent. . . .

When the preservation of the public health has been thought to require such acts as the filling of land or raising its grade over a considerable extent of territory, or the covering of land with water, or the removal of dams from streams, in order to allow better drainage, or to prevent the accumulation of offensive materials, it has been usual to pass statutes giving the requisite authority and making due provision for the protection of the property of individuals. . . . The acts done having been beyond the authority and power of the city to do, the city cannot be held responsible in damages for what was done under the supposed authority of illegal and void votes. . . . The plaintiff seeks to avoid the result by urging that part of the damage came from the negligent construction of the dam; but since it was illegal to build it at all, it is not apparent how negligence in the trespassers can entail a responsibility on the city." Nothing was presented to the referee and nothing has been brought to our notice showing that what the city did was done in the exercise of any authority or the execution of any power conferred upon it. On the other hand, by the Act of April 12, 1760, 1 Sm. L. p. 227, entitled "An act to enable the owners of Greenwich Island to embank and drain the same, to keep the outside banks and dams in good repair forever, and to raise a fund to defray sundry contingent and yearly expenses accruing thereon," the power was expressly given to the Greenwich Island Meadow Company to do, or to cause to be done, the very thing which the city of Philadelphia undertook to do without any authority, express or implied. The learned referee seems to have concluded that, as the defendant had been unable to show "that the legislature, at any time, or in any manner, prohibited the city of Philadelphia as a municipal corporation," from doing the kind of work which it had undertaken, it had the power to do it. The learned court very properly said, in considering this portion of the report: "But we are of opinion that the defendant was not called upon to show a legislative prohibition, but that the plaintiff was bound to show that the city either first, had the power granted in express words, or second, that the power was necessarily implied in, or incident to the powers expressly granted, or third, that they were essential to the declared objects and purposes of the corporation; not simply convenient, but indispensable; and, fourth, that they were powers

not exercised under the general police power, but such powers as are exercised by a municipality when acting as a private corporation." The powers given to the Greenwich Island Meadow Company were never expressly repealed, nor can they be considered repealed by implication. The principle of implied repeal is to be applied with great caution: Dillon on Mun. Corp. (3d ed.), secs. 87, 88. It cannot, therefore, be seriously contended that what the city did was done in the exercise of any power conferred upon it, and, not having so acted, no liability attached to it by reason of a negligent exercise of such power,

Though it is manifest that no breach of duty imposed upon the city was proven, and no improper or negligent exercise of power conferred upon it was shown that would render it liable to the plaintiff, can it be compelled to pay upon any other ground? If there was no failure to perform a plain duty, and if there was no power or authority to construct and maintain the sluice, how did the city act? The proper answer to this question would have saved the learned referee from the error into which he fell. It acted either in the exercise of its police power, or as a mere volunteer without authority, in relief of the Meadow Island Company. If in the former capacity, and our judgment is that it did so act, there is no responsibility for any damages resulting from the improper or negligent exercise of the power. No principle is better settled: Elliott v. Philadelphia, 75 Pa. 347; Boyd v. Ins. Patrol, 113 Pa. 270. If, on the other hand, it did not act in the exercise of its police power, the work done was that of a mere volunteer, without authority, and was in relief of the Greenwich Island Meadow Company. The duty to do the work was that of the Meadow Company, and if the city did the work in opposition to its wishes, it was done in the exercise of police power, or, if with the consent of the company, as a mere volunteer. If done as a mere volunteer, no duty arose to the appellant.

Lastly, it was contended on behalf of the appellant, that he was entitled to recover under section 8, article 16 of the constitution, which provides that municipal and other corporations and individuals, invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed for the construction or enlargement of their works, highways or improvements, and Butchers'

Ice & Coal Company v. Philadelphia, 156 Pa. 54, was pressed upon our attention as sustaining this position. But, in that case, a sewer had been constructed by the city in the exercise of its lawful authority as a municipal corporation. Therein the case differs from the one now before us. Here, the city had no authority to build the sluice, except in the exercise of its police power. The authority to construct, maintain, supervise and control the banks, dams, sluices, flood gates, drains, etc., had been acquired by the Greenwich Island Meadow Company from the commonwealth, in the exercise of its police power, and the city could not lawfully act in the premises, except in the exercise of a like potent power.

Further discussion is deemed unnecessary, and we now affirm the judgment of the court below in overruling the referee and directing judgment to be entered in favor of the city of Philadelphia.

Judgment affirmed.

