# M'Guire v. Lehigh Valley Railroad Company, Appellant.

*Negligence—Railroads—Master and servant—Bridge.*

Where a railroad company commits the designing and construction of a bridge into the hands of competent and skilled engineers, it is not obliged to accept the suggestion of the bridge contractor with regard to the amount of riprapping needed around a pier.

A railroad company is bound to exercise the highest degree of care in the construction of its bridges for the use of its trains. But the standard of duty is not to be fixed in this respect by the caprice of a jury of uninformed men.

The burden of proof of showing that a railroad company has not exercised proper care in choosing its officers or employees for a particular purpose, rests upon those who assert it.

In an action against a railroad company to recover damages for the death of a brakeman employed by the company, it appeared that the deceased was thrown into a river, and drowned, by the collapse of one span of a

railroad bridge. The deceased was, at the time of the accident, engaged with others in placing heavily loaded freight cars upon the bridge for the purpose of holding it in position, and preventing it from being washed away by an extraordinary flood then prevailing. The pier in question was built in accordance with the plans and specifications furnished by the engineers of the company, whose skill and competency were not questioned. One of the engineers testified that in his judgment the amount of riprapping around the pier was entirely sufficient. The bridge contractor testified that more riprap work should have been placed around the pier. *Held,* that it was error to submit the case to the jury, and that binding instructions should have been given for the defendant.

Argued April 10, 1906. Appeal, No. 103, Jan. T., 1906, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1902, No. 578, on verdict for plaintiff in case of James M'Guire and Margaret M'Guire, parents of James M'Guire, v. Lehigh Valley Railroad Company. Before MITCHELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for personal injuries. Before LYNCH, P. J.

The circumstances of the accident are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $3,075. Defendant appealed.

*Error assigned* was in refusing binding instructions for the defendant.

*J. B. Woodward,* of *Woodward, Darling & Woodward,* with him *H. W. Palmer,* for appellant.—It was error to submit the case to the jury: Brommer v. Ry. Co., 205 Pa. 432; Morrison v. Davis & Co., 20 Pa. 171; McCauley v. Logan, 152 Pa. 202; Derr v. R. R. Co., 158 Pa. 365; Golwitzer v. R. R. Co., 1 Mona. 72; Sykes v. Packer, 99 Pa. 465; Nuss v. Rafsnyder, 178 Pa. 397.

*John T. Lenahan,* with him *Edward A. Lynch,* for appellees, cited : Brown v. Ry. Co., 183 Pa. 38 ; Berninger v. R. R. Co., 203 Pa. 516 ; Lehigh Bridge Company v. Lehigh Coal and Navigation Co, 4 Rawle, 9; Livezey v. Phila., 64 Pa. 106 ; Baltimore and Ohio R. R. Co. v. Sulphur Spring School Dist., 96 Pa. 70; Helbling v. Cemetery Company, 201 Pa. 171.

OPINION BY MR. JUSTICE POTTER, June 27, 1906:

On the night of February 28, 1902, James M'Guire, a brakeman in the employ of the defendant company, was thrown into the Lehigh river, and drowned, by the collapse of one span of a railroad bridge. He was, at the time of the accident, engaged with others in placing heavily loaded freight cars upon the bridge for the purpose of holding it in position, and preventing it from being washed away by an extraordinary flood then prevailing.

The decedent was unmarried, and lived with his parents, and they have brought this suit, alleging negligence upon the part of the defendant company in the construction of the pier which gave way before the flood. The pier in question was built in accordance with the plans and specifications furnished by the engineers of the company. The skill and competency of the engineers are not questioned.

The pier had a base of solid concrete, about fourteen feet thick, and upon this the stone work was erected. The manner in which the work was done, is thus described by the chief engineer, under whose supervision the bridge was designed and erected. "In the construction of the foundations of the piers for which Mr. Hendler had the contract, the method used was to first dredge out the soft material forming the material at the bottom of the pool back of the dam. It consisted of mud and muck, sawdust and different material of that kind, soft material. That was dredged out. That was dredged out until the dredge bucket scraped the hard bottom. We then sounded that bottom with iron rods, and passed upon it as being sufficiently firm to support a bridge of that character. The bottom would be best described as bowlders and compact gravel, a hard mass. Then the contractor built the cofferdam or caisson, consisting of a wooden box eighteen feet wide, about fifty-eight or sixty feet long and about thirty feet high. That was built in the water, and as it grew in height, sunk down. There was no top or bottom to it, simply four sides. When that reached the bottom the bottom was still further excavated inside this box after it had come down to the bottom, and cleaned out with an orange-peel bucket we subsequently furnished to Mr. Hendler for that purpose until the bottom was well cleaned off, and then sounded over with rods to make sure

it was hard, and then the concrete put in immediately there-
after.    The concrete base filled this box on all sides, that is, it
was eighteen feet wide, about fifty-eight or sixty feet long, and
it was at pier two in question fourteen feet high."

The engineer further explained the process of riprapping,
and what was done in that respect, at this pier.    After describ-
ing the size of the large stones used, he said, " We put that
riprapping around the pier on all sides ; upstream, down-
stream, both sides, varying in height, vertical along the outside
of the wooden caisson from ten to twelve feet high, and run-
ning out from the caisson horizontally that way about from
eight to ten feet.    The total yardage deposit of new riprap
stone brought there for the purpose by Hendler and deposited
around that pier No. 2 was as per the payment we made to
him for that purpose, 371 cubic yards."

In addition to this, about 100 yards of old material was placed
around this pier, beside the new stone.    The engineer testified
that in his judgment the amount was entirely sufficient, and
that if he had not thought so, he would have ordered more, as
the matter was entirely in his hands, and under his control.

Now as against this testimony of a skilled and competent
engineer, the record shows that the contractor who built the
pier, under the direction of the engineers, was of the opinion
that more riprap work should have been placed around the
pier.    And because of this difference of opinion between the
engineers and the contractor, the trial judge allowed the case
to go to the jury, to determine who was right, and permitted
the jury to say that the company was negligent in relying upon
the judgment of its engineer, rather than upon that of its con-
tractor.

If the fact had been the other way, and the company had
followed the suggestion of the less skilled adviser, there would
have been room for criticism.    But having obtained the services
of skilled engineers, against whose capacity there is not the
slightest imputation, it would be unreasonable to allow a jury
to say that the company was negligent in resting upon the
judgment of these competent men.    It is not enough for the
plaintiffs to show that in some particulars the contractor who
did the work differed in opinion with those who made the
plans and specifications under which he worked.    This was a

question of the sufficiency and character of a structure which could only be determined by the exercise of professional skill, and great practical knowledge. It was a problem in engineering, and from its very nature it was something which a jury is not competent to decide. A railroad company is bound to exercise the highest degree of care in the construction of its bridges for the use of its trains. But the standard of duty is not to be fixed in this respect by the caprice of a jury of uninformed men.

The general rule was pointed out by this court in Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185, that the burden of proof of showing that the defendant has not exercised proper care in choosing its officers or employees for a particular purpose, rests upon those who assert it. Our own cases and those of other states are there cited to sustain the principle, thus : " In Wonder v. Baltimore & Ohio R. R. Co., 32 Md. 411, the supreme court of that state said : ' If, therefore, the defect in the brake that caused the injury, existed by reason of the neglect or want of care on the part of such employees of the defendant, the latter cannot be held liable, unless there has been negligence in the selection of those servants, and the onus of proof of such negligence is on the plaintiff.' In the Pittsburg, Ft. Wayne & Chicago Ry. Co. v. Ruby, 38 Ind. 294, it was held that the plaintiff must show ' that the defendant had not exercised ordinary care and prudence in the employment of such person.' The supreme court of Massachusetts, and the court of errors and appeals of New York have laid down a similar rule : Albro v. Agawam Canal Co., 60 Mass. 75 ; Gilman v. Eastern R. R. Co., 92 Mass. 233 ; Wright v. N. Y. Central R. R. Co., 25 N. Y. 562. The same doctrine is recognized in Feltham v. England, L. R. 2 Q. B. 33, and in our own case of Frazier v. Pennsylvania R. R. Co., 38 Pa. 104." And the supreme court of Indiana has expressed the same principle, in saying that " County officers are not negligent in accepting a bridge containing defective timbers which an expert, employed by them to determine that question, honestly believes sufficient. A mistake in respect to the safety of a bridge made by a competent person employed by the proper county officers to examine it and put it in good repair, will not make the county liable if it remains unsafe : " Vermillion County v. Chipps, 131 Ind. 56.

The trial judge correctly said that the defendant company was only bound to construct and maintain a reasonably safe bridge, and one reasonably suited for the purpose for which it was intended. But he was inconsistent in leaving the question to the jury, for there was no evidence to show any failure to discharge this duty. It was no ordinary occasion which wrecked this bridge, it was a most extraordinary flood, complicated further by the giving way of the dam below, which induced a strong sidewise current, which overturned the pier sidewise. The authorities upon this aspect of the case are thus summed up : " A railroad company is not bound to furnish absolutely safe machinery to an employee, but only such as is reasonably suitable for the purpose for which it is intended, and to exercise ordinary care to see that it is kept in such a condition. Applied to the case of an injury in consequence of a defect in a railroad bridge, the rule is said to be that a railroad company which uses ordinary care to see that a bridge on its right of way is so constructed as to be reasonably safe, and subsequently employs competent and careful inspectors who use ordinary care in inspecting it, to see that it is kept in a reasonably safe condition, is not liable to an employee for an injury received on such bridge : " 4 Thompson on Negligence (2d ed. 1904), sec. 4251. And where competent engineers pass upon the sufficiency of a structure, and decide that it is safe, the employer will not be answerable as for negligence, in case of an honest mistake of judgment made by such men. To hold otherwise would be to make the employer insure the infallibility of the judgment of its employees.

In a suit for damages occasioned by an overflow from a city sewer, we said : " There was no negligence, but want of judgment, and the municipality cannot be made liable in damages for the mistake which may be committed by its officers in the honest, fair exercise of their duties : " Collins v. Phila., 93 Pa. 272, 276. This case was followed in Sheib v. Collier Twp., 8 Sad. 526, where the damage was caused by the damming of water by a bridge claimed to have been negligently constructed.

We find nothing in the evidence in this case to show that the defendant company did anything more or less than to commit the designing and construction of the bridge into the hands of competent and skilled engineers. And having done so, it

did not, either through its engineers or other officers, accept the suggestion of the contractor with regard to the amount of rip-rapping needed around the pier. There being in this conduct nothing sufficient to sustain a charge of negligence, it is not necessary to discuss the question of the assumption of the risk by the employee.

The second assignment of error is sustained, and the judgment is reversed.