# Hass *v.* White Haven Borough, Appellant.

*Negligence—Boroughs—Reconstruction of bridge—Master and servant.*

1. Where a borough incorporated under the general borough act undertakes to tear down a county bridge within the municipal limits in order to erect a larger one adequate for the public wants, it is bound to observe due care in the demolition of the old structure; and if the person employed by the borough to superintend the work is negligent, and a workman is killed as a result of such negligence, the borough will be liable for the injuries sustained.

2. Municipal corporations, generally speaking fall within the ordinary rule that the superior or employer must answer civilly for the negligence or want of skill of his agent or servant in the course of his employment.

3. In an action against a borough to recover damages for the death of plaintiff's husband while working in the employment of the borough on the demolition of a bridge, a witness for the plaintiff who testified that his business for years had been building bridges, is qualified to express an opinion as to the cause of a fall of an arch which had injured plaintiff, and as to the ordinary methods of bridge builders in taking down and removing such an arch.

*Practice, C. P.—Delay in filing statement of claim.*

4. The appellate court will not review the discretion of the lower court in refusing a non-pros because of plaintiff's delay in filing a statement of claim, where it appears that the injury for which suit was brought occurred on October 18, 1906; that suit was begun September 14, 1907; that a plea was inadvertently entered on August 30, 1909; that the statement of claim was filed on October 16, 1911, and that thereafter the case was put upon the trial list at three terms.

Argued March 4, 1913. Appeal, No. 14, March T., 1913, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1907, No. 1,250, on verdict for plaintiff in case of Kate Haas v. White Haven Borough. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before FULLER, P. J.

From the record it appeared that the following petition for non-pros was filed:

The borough of White Haven, defendant above named, by its attorneys, John R. Halsey and Thomas F. Farrell, respectfully prays your honorable court to enter a non-pros in the above-entitled case because of laches on the part of the plaintiff in prosecuting her case.

The injury for which this action is brought is alleged to have occurred on October 18, 1906.

The suit was filed September 14, 1907.

The plea of the general issue was improvidently entered on August 30, 1909, before declaration filed, by C. E. Keck, Esq., the then attorney for defendant borough.

Plaintiff's statement was not filed until October 16, 1911, five years after the injury for which suit was brought, and over four years after the institution of the suit.

Under this state of facts, in the light of the decisions and in analogy of the statute of limitations, defendant respectfully submits that the plaintiff has been guilty

of inexcusable delay and laches for which a judgment of non-pros should be entered by the court.

On the petition the court filed the following opinion:

The facts of this case as established for the purpose of this rule by the petition and answer, are peculiar, and without undertaking to recite them at length, we think they demonstrate an impression in the minds of counsel for both parties that the plaintiff's statement had been filed. Acting under this impression, a plea was entered and the case was put upon the trial list at three terms. This being so, the presumption of abandonment, which is the basis of the present application, is not established either expressly or by constructive inference from delay, and accordingly the rule is discharged.

At the trial it appeared that on October 18, 1906, plaintiff's husband, Andrew Haas, was killed while in the employ of the borough on the demolition of a bridge within the borough limits. The evidence tended to show that the work of demolition was done in a negligent way by the persons employed by the borough to superintend the work.

When Peter Clarke, a witness for the plaintiff, was on the stand, he was asked this question:

"Q. Mr. Clarke, assuming that the defendant borough was engaged in the erection of a new stone bridge to take the place of an old arch bridge, that the foundation of the new bridge was outside the foundations of the old arch bridge, distance of about three feet on each side, that the earth was removed by the defendant's servants from around the old arch, leaving it in a stripped condition, that it stood that way for two days, and then collapsed."

The Court: Wait. Right in there add as you saw it that day when you passed.

"Q. That it stood in that exposed condition for two days as you saw it the morning on which you passed, and that shortly after you saw it, it collapsed, at a time

when the plaintiff's husband was engaged in making an excavation for the foundation of the new bridge outside of the arch of the old bridge, as I have detailed the circumstances, that the old arch was composed of stone and cement."

The Court: Very light stone and cement.

"Q. The maximum stone being about forty pounds in weight, and the stone being light, that it had been erected nine years previously, that it was from eight to ten feet wide, and from eight to ten feet high from the water level, what in your judgment was the cause of the collapse of the old arch?"

Mr. Farrell: We object, because the witness has not shown any familiarity as an expert with, concerning the bridge, under the conditions that existed such as described in this case, namely, where a large arch bridge was to be built upon the site of a smaller arch bridge. Secondly, that he is not qualified to testify as an expert as to the cause of this bridge's collapse or fall, because under the circumstances, considering the witness's knowledge and the imperfect situation as incorporated in the question, the matter is too speculative upon which to base an answer of reasonable certainty or probability.

The Court: Objection overruled, exception noted for defendant.

Mr. Valentine: Answer the question, Mr. Clarke.

"A. The cause of the collapse was taking the support, from the outside, that is, the wing walls and the haunch. [3]

Verdict and judgment for plaintiff for $650.   Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant; (3) ruling on evidence, quoting the bill of exceptions, and (4) refusal of non-pros.

*Thomas F. Farrell,* with him *John R. Halsey,* for appellant, cited: Mansfield Coal & Coke Co. v. McEnery, 91 Pa.

185; McGuire v. R. R. Co., 215 Pa. 622; Richmond
Locomotive Works v. Ford, 94 Va. 627; Moore v. R. R.
Co., 167 Pa. 495; Childs v. Crawford County, 176 Pa.
139.

*W. Alfred Valentine*, with him *G. Fred Lazarus*, for
appellee, cited: Garrity v. Casting & Machine Co.,
17 Pa. Superior Ct. 623.

OPINION BY HEAD, J., July 16, 1913:

The supplemental briefs filed by counsel on either side
are devoted to the discussion of a proposition which does
not seem to have been brought to the attention of the
court below and which had no place in the original briefs
presented to us. It may thus be stated in the language of
Mr. Justice BROWN in Betham v. Philadelphia, 196 Pa.
302: "If an act of a municipal corporation necessarily
lies wholly outside of the general or special powers of the
corporation as conferred by its charter or by statute,
the corporation can in no event be liable to an action for
damages, whether it directly commanded the performance
of the act, or whether it be done by its officers without its
express command." The record exhibits no facts which
would enable us to declare at this time that the borough
may successfully invoke the doctrine stated to relieve it
from liability in the present action. The record shows
that the bridge which the borough undertook to build was
located within the borough limits and carried one of its
streets or avenues across Limekiln creek. The borough,
incorporated under the act of 1851 and its supplements,
had ample statutory authority to erect a bridge for that
purpose, although it appears that the old bridge which
was to be replaced by the new one was either a county
bridge or at least that the county had aided in its con-
struction. We see nothing in that fact which put it be-
yond the statutory power of the borough to replace it with
a new and larger one adequate for the municipal wants.
Whilst in various places reference is made in the record to

contracts, plans, specifications, etc., none of these are printed and of their contents we have no knowledge. There is nothing before us to show more than that under an arrangement with the county commissioners some contribution was to be made by the county towards the erection of the new bridge by the borough. This would not bring it within the purview of the principle stated in Bethan v. Philadelphia, supra. Judge Dillon in his work on Municipal Corporations, 4th edition, sec. 968, declares that municipal corporations, generally speaking, fall within the ordinary rule that the superior or employer must answer civilly for the negligence or want of skill of his agent or servant in the course of his employment. He says: "To create such a liability it is fundamentally necessary that the act done, which is injurious to others, must be within the scope of the corporate powers as described by charter or positive enactment. In other words, it must not be ultra vires in the sense that it is not within the power or authority of the corporation to act in reference to it under any circumstances." We are therefore of the opinion that as the record now stands the judgment against the appellant borough could not be reversed on this ground.

Concerning the remaining questions raised by the appeal but little need be added to the opinion filed by the learned judge below refusing to enter judgment for the defendant non obstante veredicto. The able counsel for appellant strenuously urges us to hold that the present case is on all fours with Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185, and McGuire v. Lehigh Valley Coal Co., 215 Pa. 618, and that its determination is to be controlled by the application of the legal principle enunciated in those cases. We cannot so hold under the facts before us. The plaintiff's husband was employed as a laborer by the borough. It was the duty of the latter to provide him with a safe place to work. This duty was a primary one and therefore, if turned over by the borough to another, that person became a vice principal, for whose act or

neglect the borough was responsible. The deceased lost his life, not because of any fault in the design or construction of a new bridge planned by a competent expert. He was injured, as the jury has found, because the defendant borough and its agents proceeded in a negligent and unskillful manner to remove the old bridge to make way for the new. The evidence would warrant a finding that it was because the old arch was left standing, after the supporting earth, side walls, parapets, etc., had been removed, that the arch collapsed and the decedent's life was lost. John Donnelly, the man employed by the borough to have charge of the erection of the new bridge, was, as the evidence shows, a stone mason of capacity and experience. Whilst he had assisted in the building of many bridges for the Lehigh Valley Railroad Company, it does not appear that he ever designed one or did more than do a stone mason's work according to plans and specifications prepared for him by others. It does not appear here that he planned the way in which the work of removing the old bridge was to be done. That had been begun before his employment. It was carried on first under the direction of a member of council, Wallen, and, when he was called away, of another councilman named Albreechy. This work consisted in uncovering the top of the arch and tearing down the parapet walls. There is nothing to show that Donnelly, after his employment, did anything more than continue the plan of destruction that had been begun under the immediate supervision of members of the defendant council. These facts, as we view them, clearly differentiate the case at bar from those cited and relied on in the briefs for the appellant. The learned trial judge could not therefore have properly given a binding direction to the jury in favor of the defendant nor entered judgment for it non obstante veredicto. The first and second assignments are dismissed.

We discover no reversible error in the admission of the expert testimony elicited from the witness Clark. He was subjected to a careful and thorough examination as to

the extent of his knowledge and experience before he was permitted to testify. He had built railroads and bridges, stone bridges and arch bridges, and this had been his avocation for many years. We can see no reason why it was not competent for him to give to the jury his opinion, based on that knowledge and experience, as to what was the cause of the fall of the arch in the present case, and what was the ordinary method adopted by bridge builders in taking down and removing such arch before proceeding with the work of new construction. The defendant had the benefit of much like testimony, and the whole resultant question of fact was fairly and clearly submitted to the jury

The remaining assignment complains of the action of the trial court in discharging the defendant's rule for a non pros. owing to the alleged laches of the plaintiff in filing her statement of claim. Under the very peculiar circumstances of this case, the determination of that question involved the exercise of a sound discretion by the learned trial judge, and we see no reason to believe that discretion was abused. For these reasons and those more fully set forth in the opinion of the trial judge refusing judgment non obstante veredicto the assignments of error are dismissed.

Judgment affirmed.