# Fox, Appellant, *v.* Philadelphia.

*Municipalities — Philadelphia — Public building commission — Act of
August 5, 1870, P. L. 1871, 1548—Negligence—Elevators.*

The city of Philadelphia is liable for a death caused by the negligence
of an operator of an elevator employed by the public building commission
created by the Act of August 5, 1870, P. L. 1871, 1548, if it appears that
at the time of the accident a portion of the building had been delivered to
the city, that the elevator in question was being used in carrying the pub-
lic to the courts and the operator was being paid by the city.

*Negligence—Municipalities—Elevators—Presumption as to negligence.*

The rule applicable to common carriers of passengers that the mere happening of an injurious accident to a passenger raises prima facie a presumption of negligence on the part of the carrier, is also applicable to a municipality which operates elevators in a public building.

A person or municipality owning and operating elevators in a building must give to the persons using the elevators the utmost protection which human knowledge, human skill and human foresight and care can provide. In case of injury without fault or negligence by the person injured, the presumption is that such protection had not been afforded, and that there had been negligence on the part of those operating the elevator.

Argued Jan. 20, 1904. Appeal, No. 346, Jan. T., 1902, by plaintiff, from order of C. P. No. 1, June T., 1899, No. 895, refusing to take off nonsuit in case of Edward J. Fox et al. v. Philadelphia. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Reversed.

Trespass to recover damages for the death of plaintiff's father. Before BEITLER, J.

The facts are stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was the order of the court.

*Wendell P. Bowman,* for appellants.—Under all the circumstances as shown by the evidence submitted, plaintiffs contend that it raises a legal presumption of negligence that entitled them to go to the jury. The onus was then on the defendant to show affirmatively that the accident was not due to its want of care in any particular: Spear v. P. W. & B. R. R. Co., 119 Pa. 61.

For the same reason—a regard for human life—that common carriers are required to exercise the highest degree of care for the safety of their passengers, a like degree of care is exacted in transferring persons by elevator between the same floors of a building. . . . He is, therefore, bound to use the greatest care, not only in providing safe and suitable cars, appliances and machinery for motion and control, but also in managing these means of transportation : Riland v. Hirshler, 7 Pa. Superior Ct. 384; Goodsell v. Taylor, 41 Minn. 207 (42 N. W.

Repr. 873); Treadwell v. Whittier, 80 Cal. 574 (22 Pac. Repr. 266); Mitchell v. Marker, 62 Fed. Repr. 139; 25 L. R. A. 33; Hartford Deposit Co. v. Sollitt, 172 Ill. 222 (50 N. E. Repr. 178).

The testimony proves all the circumstances of the accident necessary to cast the burden of exculpation on the defendant and also affirmatively proves negligence on the part of defendant: Oil Co. v. Penna. Torpedo Co., 190 Pa. 350.

The commissioners for the erection and furnishing of City Hall, with their limited powers, with the city authorities bound to act in conjunction with them in the exercise of that limited power and under all the circumstances, were simply the agents of the defendant: Bailey v. Mayor, etc., of New York, 3 Hill (N. Y.), 531; Barnes v. District of Columbia, 91 U. S. 540; Esberg Cigar Co. v. Portland, 34 Oregon, 282 (55 Pac. Repr. 961).

The city in operating the elevator was acting in a private, as distinct from a governmental, capacity: Wester Saving Fund Society of Phila. v. Phila., 31 Pa. 175; Com. v. Philadelphia, 132 Pa. 288; Girard Life Ins. Co. v. Philadelphia, 88 Pa. 393; Philadelphia v. Gilmartin, 71 Pa. 140; Kibele v. Philadelphia, 105 Pa. 41; Giovanni v. Philadelphia, 59 Fed. Repr. 303; Guthrie v. Philadelphia, 73 Fed. Repr. 688; Oliver v. Worcester, 102 Mass. 489; Briegel v. Philadelphia, 135 Pa. 451.

*Harry T. Kingston*, assistant city solicitor, with him *Joseph S. MacLaughlin* and *John L. Kinsey*, city solicitor, for appellee. —The status of the city of Philadelphia and that of the public building commission is well defined in the case of Perkins et al. v. City of Philadelphia, 156 Pa. 554.

The only doctrine of law upon which the city could be held liable would be that of respondeat superior, and which is entirely inapplicable to the present case: Alcorn v. Philadelphia, 44 Pa. 348; Ashby v. Erie, 85 Pa. 286; Winpenny v. Philadelphia, 7 Phila. 111; Philadelphia v. McManes, 175 Pa. 28; Donovan v. Board of Education of New York, 85 N. Y. 117; Freeman v. City of Philadelphia, 7 W. N. C. 45; Elliott v. City of Philadelphia, 75 Pa. 347; Perkins et al. v. Slack et al., 5 W. N. C. 153.

The evidence failed to disclose notice, either actual or constructive, to either the commissioners or the city of Philadelphia.

To render the city liable, it must be shown to have had either actual or constructive notice : Harrison v. Collins, 86 Pa. 153 ; Burns v. City of Bradford, 137 Pa. 361.

The case at bar seems to come clearly within the ruling of McClain v. Henderson, 187 Pa. 283 ; Davis v. Corry City, 154 Pa. 598; Lohr v. Philipsburg Boro., 156 Pa. 246 ; Rogers v. Williamsport, 199 Pa. 450.

OPINION BY MR. JUSTICE BROWN, February 15, 1904 :

On May 12, 1899, James W. Fox, the father of appellants, was attending one of the courts in City Hall, Philadelphia, having in his charge a helpless old lady, who was moved on a rolling chair. After he left the court room with her he rolled the chair to an elevator at the northwest corner of the corridor on the second floor of the building, to be taken down to the first. When the elevator descended to the second floor and the door was opened, he pushed the chair into it at the invitation of the man operating it, and when he was about to get on it, having one foot on it, it suddenly started downward. He had his hand on the rear of the chair at the edge of the elevator, and, in its descent, was caught by the top and crushed to death. A nonsuit was entered, the trial judge saying : " We take it, then, that in 1899, when this accident happened, the elevator was under the management and control of the commission, operated by its employee, who was in no sense under the control or direction of the city. The question, then, is, was the city liable for his negligence if he was negligent? The decisions of the Supreme Court in Alcorn v. Phila., 44 Pa. 348, and in Ashby v. Erie, 85 Pa. 286, would seem to rule this question against the plaintiffs. But I prefer not to rest the decision of this case upon this point, but upon the broader ground that the plaintiffs have shown no negligence. . . . The principles, so clearly stated by Justice FELL in McClain v. Henderson, 187 Pa. 283, apply to this case, and for the reason that the evidence discloses an accident, but no negligence, the nonsuit is granted."

The Act of August 5, 1870, P. L. 1871, 1548, under which the public building commission of the city of Philadelphia was

constituted, is entitled: "An act to provide for the erection
of all the public buildings required to accommodate the courts
and for all municipal purposes in the city of Philadelphia, and
to require the appropriation by said city of Penn square,
at Broad and Market streets, to the Academy of Fine Arts,
the Academy of Natural Sciences, the Franklin Institute and
the Philadelphia Library, in the event of the said squares not
being selected by a vote of the people as the site for the public
buildings for said city." Though the commission was a most
important one, the act creating it is brief; but the powers and
duties of the commissioners are clearly defined. From the
title to the act it is first learned that it was passed to provide
simply for the erection of the public buildings. Reading it
through, the powers and duties of the commission in connec-
tion with the public buildings are confined strictly to their
erection and furnishing. There is a provision that "it shall
be the duty of the mayor, the city controller, city commission-
ers and city treasurer, and of all other officers of the city, and
also the duty of the councils of the city of Philadelphia, to
do and perform all such acts in aid and promotion of the in-
tent and purpose of this act of assembly as said commission
may from time to time require;" but there is a clear limita-
tion put upon the power of the commission to expend the
moneys of the city. It is, "that the amount to be expended
by said commissioners shall be strictly limited to the sum
required to satisfy their contracts for the erection of said
buildings and for the proper and complete furnishing thereof."
And there is a further provision that, "as soon as any part of
said buildings may be completed and furnished ready for occu-
pancy, they shall be occupied by the courts or such branch
of the municipal government as they are intended for."

To erect and furnish, and nothing more, were all the com-
missioners were to do. Neither the building, nor any part
of it, when finished, was to be under their control, manage-
ment or operation. They had no voice in maintaining it, and
they could neither rebuild, repair nor refurnish. Whatever
powers were not given to them were withheld from them and
remained in the city with the duties incident thereto. Ele-
vators which were necessary in the erection of the building
would necessarily be under the control and management of the

commissioners, but not an elevator used, as this was, in carrying persons to and from finished and furnished portions of the City Hall. It was a part of a finished part of the building, which, when finished and furnished, passed, if not by the express words of the act, by implication that cannot be questioned, from the hands of the commission to the control and management of the municipality itself, from responsibility for which it cannot relieve itself by allowing others to perform its duties for it; and it is to be assumed that all the machinery connected with the operation of the elevator was also finished, else it would not have been operated as a means of transportation for those having business in the courts and municipal offices. The man who ran it may have been employed by the building commission, but he was paid out of the treasury of the city, and it was the duty of the city, not of the building commission, to have employed him or some other competent person to operate its elevator. It was further the duty of the city to see that it and the machinery connected with its operation were not defective, for no such duty had been imposed upon the building commissioners, and if, when this accident occurred, they were acting beyond the limitation upon their powers and exercising duties that they were not called upon to perform, the city, which ought to have performed them, is answerable for failure to do so.

It is manifest that the learned trial judge was misled by the cases upon which he relied in directing the judgment of nonsuit. In Alcorn v. The City of Philadelphia, 44 Pa. 348, the action was brought for damages sustained by the alleged negligence of a district surveyor in giving the plaintiff the lines of his lot on which he proposed and actually proceeded to build. The judgment for the defendant, non obstante veredicto, was sustained because the surveyor had been elected directly by the people, under the authority of a statute, and the city, having no control over him, was, therefore, not bound by any of his acts. We further held that it is not a duty incumbent upon cities, in their corporate capacity, to provide for the survey of lots and location of lines, but a private one, falling upon the lot owners themselves, and, if injury results from negligence or unskilfulness in the surveyor employed, the employer must look to him for redress. A judgment of nonsuit was sustained

in Ashby v. City of Erie, 85 Pa. 286, in a suit by the plaintiffs for the flooding of the basement of their store by the bursting of a street water main, because, by the Act of April 4, 1867, P. L. 768, the waterworks of the city had been built and were managed by commissioners appointed by judges of the court of common pleas of the county, and, among other duties imposed upon them by the statute, they were required to take the full charge and control of the erection and completion of the waterworks of the city, make all contracts for the erection and completion thereof, provide for the repair and maintenance of the same, collect the water rents and appoint their own officers and agents. These commissioners were an independent board, wholly independent of the city authorities, and it was not liable for the nonperformance of a duty which had not been imposed upon it, but, by the very words of the statute, upon the board of commissioners. McClain v. Henderson, 187 Pa. 283, was a suit against an employer by the widow of one of his employees, who had been killed by the breaking of a chain in the machinery, and the plaintiff was, of course, bound to show the negligence of the employer, for, as between employer and employee, there is no presumption of it; but no such relation existed between the father of the appellants and the city of Philadelphia, and this last case does not apply to them. ' Their right to recover depends upon a different rule.

Under the assumption that the burden was upon them to affirmatively establish the negligence of the city, the appellants undertook to do so. They proved that the elevator had been equipped with what was known as the Connor safety device, which, if in order, automatically locked the elevator when the door was open; that if it had been in working order on the day of the accident, it would have been impossible for the elevator to descend when the door was open ; that it was discovered after the accident that this device had become unhooked or uncoupled, and that, before the man operating the elevator told the deceased to get on it, he knew it was not working properly. In view of this discovery by the operator, it is contended that he ought to have stopped using the elevator and reported its condition, that it might be repaired, and that it was negligence to continue its use, imperiling the lives of

those who got on it.  Of plaintiffs' evidence the learned trial judge said that it undoubtedly showed the locking device to have been either disconnected or out of order.  Whether this evidence was sufficient for the purpose for which it was offered we need not decide, for the plaintiffs were not called upon for specific proof that the city had been negligent.  Their case was for the jury when they showed that their father had been crushed to death by the elevator through no fault or negligence on his part, and it was for the defendant to rebut the presumption that it had been negligent.

The rule for the protection of passengers in the hands of common carriers laid down in Laing v. Colder, 8 Pa. 479, recognized elsewhere, and unvaryingly followed by us, is, that " the slightest neglect against which human prudence and foresight may guard, and by which hurt or loss is occasioned, will render them liable to answer in damages.  Nay, the mere happening of an injurious accident, raises prima facie a presumption of neglect, and throws upon the carrier the onus of showing it did not exist."  This presumption may, of course, be rebutted by the carrier by showing that the injury arose from an accident which the utmost skill, foresight and diligence could not have prevented : Meier v. Penna. R. R. Co., 64 Pa. 225.

The foundation of the rule for the protection of a passenger is in the undertaking of the common carrier, which is to carry safely ; but another reason for it is, that when the passenger commits himself to the carrier he does so in ignorance of the machinery and the appliances, as well as their defects, used in connection with the means of transportation, and becomes a passive and helpless creature in the hands of the transportation company and its agents.  For the same reasons this rule should be extended to those who operate elevators for carrying passengers from one story of a building to another.  When they undertake to carry, they undertake to do so safely.  If it is not their express agreement to do so, it is surely an implied one, and the condition of a passenger caged in a suspended car is one not only of utter ignorance of what has been done, or ought to be done, for his safety, but of absolute passiveness and pitiable helplessness, when confronted with danger against which human knowledge, skill and foresight ought to have guarded.

And the rule has been so extended.  " For the same reason—a regard for human life—that common carriers are required to exercise the highest degree of care for the safety of their passengers, irrespective of any contract of carriage, a like degree of care is exacted of a landlord, in transporting persons by elevator between the several floors of his building.  He is therefore bound to use the greatest care, not only in providing safe and suitable cars, appliances and machinery for motion and control, but also in managing these means of transportation : " 2 Shearman & Redfield on Negligence (5th ed.), 1240.  In Treadwell v. Whittier, 80 Cal. 574,* the rule is laid down that the plaintiff is only called on to show that he was hurt by the breaking of the machinery of the elevator, and that, when he has done so, he has made out his case, as he is not required to make any particular proof of negligence.  Referring to the responsibility of common carriers, it is there well said :  " The same degree of responsibility must attach to one controlling and running an elevator.  Persons who are lifted by elevators are subjected to great risks to life and limb.  They are hoisted vertically, and are unable, in case of the breaking of the machinery, to help themselves.  The person running such elevator must be held to undertake to raise such persons safely, as far as human care and foresight will go.  The law holds him to the utmost care and diligence of very cautious persons, and responsible for the slightest neglect.  Such responsibility attaches to all persons engaged in employments where human beings submit their bodies to their control by which their lives or limbs are put at hazard, or where such employment is attended with danger to life or limb.  The utmost care and diligence must be used by persons engaged in such employments to avoid injury to those they carry.  The care and diligence required is proportioned to the danger to the persons carried.  In proportion to the degree of danger to others must be the care and diligence to be exercised ; where the danger is great, the utmost care and diligence must be employed.  In such cases the law requires extraordinary care and diligence. We know of no employment where the law should demand a higher degree of care and diligence than in the case of the

---

*Also reported 22 Pac. Repr. 266.—REPORTER.

persons using and running elevators for lifting human beings from one level to another. The danger of those being raised is great. When persons are injured by the giving way of the machinery the hurt is always serious, frequently fatal; and the law should, and does, bind persons so engaged to the highest degree of care practicable under the circumstances. It would be injustice and cruelty to the public in courts to abate in any degree from this high degree of care. The aged, the helpless, and the infirm are daily using these elevators. The owners make profit by these elevators, or use them for the profit they bring to them. The cruelty from a careless use of such contrivances is likely to fall on the weakest of the community. All, including the strongest, are without the means of self-protection upon the breaking down of the machinery. The law, therefore, throws around such persons its protection, by requiring the highest care and diligence." Another case to which reference may be made is Hartford Deposit Co. v. Sollitt, 172 Ill. 222,* where it is held, that "persons operating elevators are carriers of passengers, and the same rules applicable to other carriers of passengers are applicable to those operating elevators for raising and lowering persons from one floor to another in buildings. It is a duty of such carriers of passengers to use extraordinary care in and about the operation of such elevators, so as to prevent injury to persons therein. The fact of the falling of the elevator is evidence tending to show want of care in its management by the operator or its servants, or that the same was out of repair or faultily constructed."

The foregoing rule is peculiarly applicable to those operating elevators like the one in the present case. The courts of Philadelphia are not on the first floor of the City Hall. They are reached on the upper stories by stairways and elevators. When summoned to attend them, suitors and witnesses must go, and, on reaching the public buildings, they find two means of ascending to them—stairways and elevators, finished, and, as already shown, subject to the control and management of the city. Either means of reaching the courts may be adopted, though, to one who climbs the staircase, the elevators carry

*Also reported 50 N. E. Repr. 178.—REPORTER.

hundreds; and it sometimes happens, as here, that the halt and the lame are summoned to these upper stories, and they cannot mount the stairways, but must be carried by the elevators. To them, to those who attend them in their helplessness, and to all others, who, from choice or necessity, use these elevators, there must be given the utmost protection which human knowledge, human skill and human foresight and care can provide. In case of injury, without fault or negligence by the one injured, the presumption is that such protection had not been afforded, and that there had been negligence on the part of those operating the elevators.

Judgment reversed and a procedendo awarded.