## Foster, Appellant, *v.* Mutual Guarantee Building and Loan Association.

154

Argued January 12, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*Walter Thomas,* for appellant.

*Bayard L. Buckley,* for appellee.

OPINION BY MR. JUSTICE LINN, January 31, 1938:

This appeal is from an order refusing to take off a nonsuit in trespass. Plaintiff sues for damages resulting from the unlawful sale of certain personal property on a fi. fa.

In appellant's history of the case the suit is described as follows: "An action in trespass was brought by the appellant against the appellee to recover damages as averred in the statement of claim for the unlawful sale of all the appellant's household goods, clothing, shoes, hats, sewing machine, and Bible by the sheriff on an alias writ fi. fa. procured to be issued by the appellee for the cost of storage of said goods which had been removed from the appellant's house, 112 N. Woodstock Street, on the writ of possession and stored in Walker's Storage House, 15th and Dauphin Streets, Philadelphia, on the 31st day of October, 1933."

Defendant building and loan association, holding plaintiff's bond and mortgage in the sum of $8,500,

caused judgment for default to be entered February 3, 1933, in its favor and against the present plaintiff, in the sum of $10,160.19. Foreclosure followed and the mortgaged real estate was sold at sheriff's sale April 10, 1933, to the defendant for $50, who took title from the sheriff. In the brief, her counsel states that plaintiff was at the sale but was given no opportunity to bid and that "at the time scheduled for sale, the sheriff rattled off the numbers—437, 438, 439, so quickly there was no time to bid and no bids were ever made on the said property. . . ." It is also said that the attorney for plaintiff in the execution (now the defendant) "requested prospective bidders not to bid on the property" and that the secretary of the execution plaintiff "informed the appellant that the appellee would go the limit to get the property." On the same page, the brief states that, at that time, "appellant had no money to employ an attorney to take proceedings to set the sale aside."

It must be said that if, for the reason given, plaintiff was unable to employ counsel, she was, for the same reason, so far as the record shows, also unable to bid and pay the amount of the judgment; it is the amount of the judgment with interest and costs which was the "limit," as we understand it, that the secretary of the execution-plaintiff said that it would bid. The mere requests of "prospective bidders not to bid" is not sufficient, without more (compare *Woodruff v. Warner*, 175 Pa. 302, 308, 34 A. 667), to support a finding of unlawful conduct in the respect suggested. None of these matters, referred to in the brief, is relevant in the present action for the unlawful sale of the personal property to which we now come and which is the basis of this suit.

After the sheriff's sale of the real estate, the present plaintiff, who lived in the house, refused to surrender possession. An order for possession was then obtained pursuant to the Act of April 20, 1905, P. L. 239, 12 PS

section 2571 et seq. It is perhaps at this stage of the transactions between the parties that the following averment, which we quote from the first paragraph of the statement of claim, takes up the subject and begins the averment of the tort for which damages are now sought: "That subsequently by virtue of said judgment in rem a writ of possession was issued [in the proceedings described above] and the defendant caused to move [to be moved?] all the plaintiff's household goods and place the same in a storage at J. H. Walker Storage Co. 15th above Dauphin Sts." The remainder of the statement of claim is as follows: "2. That on or about February 16, 1934, the defendant caused an alias writ of fi. fa. to be issued for the sale of said goods for warehouse storage only,[1] and the said goods were unlawfully taken in execution by virtue of said writ, and on January 17, 1935, unlawfully sold for the sum of $165.00 for the payment of warehouse storage. That the value of said goods sold at that time was worth more than $3,000.00. An itemized statement of said goods, the property of the plaintiff, is hereto attached and made a part of this statement of claim.

"3. The plaintiff demands punitive damages.[2]

"4. By reason of the aforesaid premises the plaintiff demands to recover the value of said goods, the unlawful taking of the same as compensatory damages.

"5. The plaintiff demands to recover from the defendant compensatory, actual and punitive damages in the sum of $15,000.00."

---

[1] The pleader's conclusion of the purpose of the sale is not supported by the record. The præcipe for the writ is as follows: "Issue writ of Alias Fieri Facias to sell Personal Property for costs, returnable . . . Real debt $10,160.19 Interest from 2/15/34." The writ itself directed the sheriff to "levy on all household goods and furniture etc. now in storage with [blank]. These goods are to be sold to cover costs."

[2] In this trial, plaintiff did not make out a case for punitive damages.

Though not a model of pleading, defendant, without challenging the statement of claim, went to trial.

The records in the mortgage foreclosure and subsequent proceedings for possession of the real estate show that defendant was entitled to possession. When possession was delivered the house contained the furniture of the present plaintiff. She could not keep the furniture in the defendant's house without the defendant's consent. If, as owner of the furniture, she did not remove it, the defendant building association was of course entitled to do so: see sections 260, 266, Restatement, Torts. The evidence shows that the goods were removed by the sheriff, or someone acting on his behalf, and that the attorney for the building association, as plaintiff testified, "was there, right there. He seen everything go out. Q. He was directing it? A. Yes." We may assume for present purposes that, if nothing more had been done than removing the goods from the house, defendant would have been acting within its right to have the exclusive possession of the house and lot. But the transaction did not end in that way. The averment in the statement is that defendant moved the goods to a storage warehouse from which they were subsequently sold as has been stated.

In defendant's brief nothing is said about the claim that there was a tortious seizure and sale of personal property; the argument made relates to the sheriff's sale of the real estate, which, as has been said, is involved only as the basis of the proceedings to obtain possession pursuant to the Act of 1905, supra.

By what right did defendant take plaintiff's goods, as alleged, and put them in storage beyond plaintiff's control? Did the plaintiff consent? Unless defendant can justify its acts, it must pay resulting damage. See Restatement, Torts, sec. 278 (2); cf. *Wilson v. Ellis,* 28 Pa. 238; *Carrier v. Esbaugh,* 70 Pa. 239. It may have a defense; but as no affidavit of defense was filed, and as plaintiff was nonsuited, we are not advised on the subject.

In the circumstances, it was error to refuse to take off the nonsuit. There was evidence from which the jury might have found that defendant wrongfully carried away plaintiff's goods, stored them in a place where she was refused access to them when she demanded it, that they were subsequently sold on a writ of fi. fa., issued at appellee's instance, and that appellant suffered certain damage as a result.

We may add, in view of what is said in the brief filed on behalf of plaintiff, that the judgment on the mortgage foreclosure, the sale of the land on the judgment, and the title to the land in the defendant, are not subject to attack in this proceeding, as the argument suggests.

Judgment reversed and new trial awarded.