Hartness, Appellant, v. Allegheny County.

Argued March 23, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Coleman Harrison,* with him *Adolph Goldberg,* for appellant.

*Francis J. O'Connor,* Assistant County Solicitor, with him *John J. O'Connell,* County Solicitor, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, April 20, 1944:

Plaintiff, a pedestrian on the sidewalk in front of the County Court House in Pittsburgh, was struck by a mass of snow and ice which fell from the roof of that building. Claiming that the pitch of the roof was so sharp that there should have been a parapet or snow guards or some other device to prevent such an accident, plaintiff instituted an action against Allegheny County to recover damages for the injuries he sustained. His present appeal is from a judgment of compulsory non-suit entered against him.

There is such a multitude of opinions in our reports which deal with the non-liability of a municipality for the negligence of its employes occurring in the exercise of a governmental function that for present purposes the law on that subject need merely be recapitulated. It distinguishes between the acts of municipalities done in their proprietary or business capacity and those which

250

they perform as functions of government delegated by the State. As to the former the doctrine of respondeat superior applies;[1] as to the latter, it does not.[2]

The immunity from liability which exists when governmental functions are exercised is especially proclaimed and enforced in the case of such quasi-corporate entities as poor districts,[3] school districts,[4] and counties.[5] The Commonwealth itself is not liable for the torts of its employes in the absence of a statute expressing or implying such liability (*Collins v. Commonwealth*, 262 Pa. 572, 580, 106 A. 229, 232), and counties are largely invested with the same immunity because they are practically nothing more than administrative units which constitute parts of the machinery making up the public

---

[1] Supplying water: *Armstrong & Latta v. City of Philadelphia,* 249 Pa. 39, 94 A. 455; *American Aniline Products, Inc., v. Lock Haven,* 288 Pa. 420, 424, 135 A. 726, 727; *Shirk v. Lancaster City,* 313 Pa. 158, 164, 165, 169 A. 557, 560. Furnishing gas: *Kibele v. City of Philadelphia,* 105 Pa. 41. Furnishing licenses and grants for electric lighting: *Bodge v. Philadelphia,* 167 Pa. 492, 31 A. 728. Operating a public playground: *Paraska v. Scranton,* 313 Pa. 227, 169 A. 434. Maintaining and managing a park: *Honaman v. Philadelphia,* 322 Pa. 535, 185 A. 750.

[2] Furnishing police protection: *Elliott v. City of Philadelphia,* 75 Pa. 347; *Betham v. Philadelphia,* 196 Pa. 302, 312, 46 A. 448, 451. Furnishing fire protection: *Kies v. City of Erie,* 135 Pa. 144, 19 A. 942; *Devers v. Scranton City,* 308 Pa. 13, 161 A. 540. Collecting ashes and refuse: *Scibilia v. Philadelphia,* 279 Pa. 549, 124 A. 273.

[3] *Wildoner v. Central Poor District of Luzerne County,* 267 Pa. 375, 110 A. 175.

[4] *Ford v. Kendall Borough School District,* 121 Pa. 543, 15 A. 812; *Wallace v. Pittsburgh School District,* 316 Pa. 388, 175 A. 411; *Carlo v. Scranton School District,* 319 Pa. 417, 179 A. 561; *Goldstein v. Philadelphia School District,* 329 Pa. 71, 196 A. 863; *Devlin v. Philadelphia School District,* 337 Pa. 209, 215, 10 A. 2d 408, 410; *Kesman v. Fallowfield Township School District,* 345 Pa. 457, 29 A. 2d 17.

[5] *Bucher v. Northumberland County,* 209 Pa. 618, 59 A. 69; *Hubbard v. Crawford County,* 221 Pa. 438, 70 A. 805; *Kelley v. Cumberland County,* 229 Pa. 289, 78 A. 276; *Balashaitis v. Lackawanna County,* 296 Pa. 83, 145 A. 691.

system (*Commonwealth v. Brice*, 22 Pa. 211, 214); they are political subdivisions of the State, not municipal corporations. It is true that, although the construction and maintenance of bridges and public roads is a governmental function, counties are held liable for accidents resulting from negligence in repairing and maintaining them.[6] This exception to the general rule has been ascribed to the existence of statutory mandates which impose upon counties the duty to keep their bridges and roads in repair, but this explanation fails in view of the fact that the duty of a municipality to organize and maintain police and fire service, as to which no tort liability exists, is as definitely prescribed by statutes as is the duty of a county to maintain and repair its highways and bridges. The truth seems to be, as pointed out in *Ford v. Kendall Borough School District*, 121 Pa. 543, 549, 15 A. 812, 816, and *Scibilia v. Philadelphia*, 279 Pa. 549, 555, 124 A. 273, 275, that the imposition of liability for negligence in failing properly to maintain highways stems more from historic reasons and long established precedent than from legal consistency or logic.

That the erection and maintenance of a Court House partakes of the nature of a purely governmental function admits of no argument, for there is no more important function of government than to provide for the administration of justice, and the same characterization applies, generally speaking, to the activities of all the county offices ordinarily located in such a building: *Henry Shenk Co. v. Erie County*, 319 Pa. 100, 110-112, 178 A. 662, 667; *Cousins v. County of Butler*, 73 Pa. Superior Ct. 86, 91. For the reason already stated the fact that the General County Law of May 2, 1929, P. L. 1278, Section 552, provides that "the board of commis-

---

[6] *Gehringer v. Lehigh County*, 231 Pa. 497, 80 A. 987; *Clark v. Allegheny County*, 260 Pa. 199, 103 A. 552; *McCormick v. Allegheny County*, 263 Pa. 146, 106 A. 203.

sioners shall keep and maintain the public buildings of the county in suitable and convenient order and repair" cannot be held to impose upon the county a tort liability for negligence on the part of the commissioners in the execution of this mandate: *Cousins v. County of Butler,* 73 Pa. Superior Ct. 86, 91-94.

The Court House of Allegheny County is a huge, imposing building which houses the Criminal Courts, the District Attorney, the County Detectives, the Headquarters of the County Police, the County Court, the Sheriff, the County Comptroller, the County Treasurer, the County Commissioners, and the Board of Assessment and Revision of Taxes, the functions of all of which institutions, departments and agencies are purely governmental. Upon what, then, does plaintiff rely in seeking to deprive the county of the immunity from tort liability to which it is presumably entitled in connection with the operation and maintenance of its Court House? Solely upon the fact that there are in the building a few public telephones, a bootblack stand (for which no rental is charged because the operator renders service in keeping the lavatory clean), and the office of the Bureau of Property and Supplies; this Bureau purchases, inter alia, material and equipment used by the county in connection with the operation of some restaurants, tennis courts, golf courses and swimming pools in two county parks, and the revenue from those enterprises is brought to the Court House building. It would be little short of a legal grotesquery to hold that liability of the county to a pedestrian on the street who is injured by a fall of snow from the Court House roof arises from the mere fact that there happen to be in the building a bootblack stand, a few public telephones and some clerks employed in a Bureau of Property and Supplies. Surely the answer to plaintiff's contention is that it is the *predominant* nature of the activities carried on within the building which must determine his right of recovery;

the controlling question is whether the *principal* use of the structure is for the conduct of proprietary and business operations or whether these are so relatively incidental and unimportant as not to deprive the building of its general character as a Court House. Here we have an extremely large building, occupied, to all intents and purposes exclusively, by the county courts and county agencies of government, and in which the space occupied by the bootblack stand and the public telephone booths is so slight as to be unworthy of consideration so far as the question here involved is concerned. As for the Bureau of Property and Supplies, the charges paid by customers of the restaurants and the amusement enterprises in the parks are paid on the park premises and not in the Court House; the most that can be said is that the revenue thus collected, constituting an exceedingly small percentage of the total income of the county, is accounted for in the Court House building, and that among the multitude of contracts negotiated by the Bureau of Property and Supplies for the needs of the county some relate to equipment purchased for the use of these park establishments.

There are two decisions of this court on which plaintiff leans for support. The one is *Fox v. Philadelphia,* 208 Pa. 127, 57 A. 356, where the City of Philadelphia was held liable for a death caused by the negligence of the operator of an elevator in the City Hall. The action was not against the county but against the city, and, while the county courts are housed in that structure, the greater part of the building is devoted to the city departments. The court in its opinion did not mention, much less discuss, the question of the non-liability of a municipality for torts committed in the exercise of governmental functions, and in regard to this case Chief Justice MOSCHZISKER said, in *Scibilia v. Philadelphia,* 279 Pa. 549, 561, 124 A. 273, 278: ". . . that it [the municipality] was doing the latter [carrying on a business

undertaking] seems to have been assumed, probably on the ground that, since, in this structure, owned by the municipality, are housed not only the local courts and the purely governmental departments of the city, but also the revenue producing and purely business departments of the latter, the structure should be considered as any other business or office building."

The other case relied on by plaintiff is *Bell v. Pittsburgh*, 297 Pa. 185, 146 A. 567, where a person injured by the negligence of an elevator operator in the City-County Building in Pittsburgh was held entitled to recover, not only from the City of Pittsburgh but also from the County of Allegheny. This decision, the correctness of which is not entirely free from doubt, was based upon the fact that the county and the city had erected and maintained the building as a joint enterprise and were therefore held obliged to share a common liability in connection with its maintenance and operation. The court said (p. 189, A. p. 568): ". . . there can be no doubt that the city in many of its departments was engaged in purely business enterprises in this building, notably the water business; in the dual or joint relationship of these agencies of government, their activities must be judged from such legal aspects as their mixed relations warrant." The situation in the present case is wholly different, for in the Court House no business of the *city* is transacted, and the only business operations conducted by the *county*, as distinguished from its governmental activities, are minimal.

Judgment affirmed.