## Hare, Admr., v. Denny et al.

*H. Reginald Belden* and *R. F. Marsh, Jr.,* for plaintiff.

*Smith, Best & Horn,* for defendants.

LAIRD, P. J., April 5, 1948.—This is an action in trespass brought to recover for the death of a child which occurred under very unfortunate circumstances.

A complaint was filed February 14, 1947, by plaintiff herein, alleging, inter alia, that individual defendant, Elmo Denny, was at the time of the events complained of and thereinafter set forth an employe of the City of Greensburg, serving in the capacity of a dog catcher and having custody and control of certain dogs and exercising supervision over the dog pound of the City of Greensburg, and that on December 16, 1946, by reason of the negligence of defendant, Elmo Denny, a dog escaped from the said Elmo Denny and was permitted to run at large in and about the City of Greensburg and Hempfield Township, and that the said dog "attacked and bit Sandra Ruth Hare in and about the chin, lips, right cheek and mouth, causing severe . . . and serious injuries by reason of which she died in the Westmoreland Hospital on the 4th day of January, 1947." The complaint further avers that "the said dog was vicious and was known by the defendants to be of a vicious nature and disposition at the time said dog was delivered into the custody of and received by the defendant, Elmo Denny, Dog Catcher for the City of Greensburg as aforesaid; the said dog on December 16, 1946 was afflicted with rabies, and was known or should have been known by the defendants to have been so afflicted and on or about the 20th day of December, 1946, the said dog died as a result of rabies".

The complaint also contained the customary and necessary allegations of negligence.

To this complaint an appearance was entered for the city March 12, 1947, and an answer filed on the merits on April 1, 1947. Sometime subsequent thereto a petition was presented by counsel for the city asking leave to withdraw the answer and in lieu thereof permission to file a demurrer. "If technical exceptions be

not brought to the notice of the court in a formal manner and at a proper time, it will be presumed that the party elects to proceed on the merits": Watts' Appeal, 78 Pa. 370. Counsel for plaintiff objected to the withdrawal of the answer and also to the filing of a demurrer, alleging that it was too late and that defendants had slept on their right to demur. The press of business interfering, the matter was overlooked and neglected until May 8, 1947, when the writer hereof, not having the papers or plaintiff's brief before him and being under the erroneous impression that plaintiff had consented to the withdrawal of the answer and the filing of the demurrer, signed an order, of which complaint is now made, permitting the withdrawal of the answer and the filing of the demurrer.

As the matter now stands three questions are raised by plaintiff, first, as to defendant's right to withdraw its answer, and file a demurrer raising questions of law; second, as to the court's authority to permit it to do so, and third, the question of law raised by the demurrer.

Plaintiff strenuously contends that having answered to the merits of the case, the city defendant has no right to withdraw its answer and file a demurrer after the time allowed for answering or demurring has expired, citing Boyle v. Breakwater Co., 239 Pa. 577; Nice Ball Bearing Co. v. Mortgage Building & Loan Association, 310 Pa. 560, and McCall Co. v. Kershbaum et al., 97 Pa. Superior Ct. 189. See also Kreitzer v. Carrick, 22 Westmoreland 210, where the late Judge Whitten said, quoting from page 212: " 'A defendant cannot attack the regularity and sufficiency of a statement of claim, after he has filed an affidavit of defense to the merits' ". This was unquestionably the law before the adoption of the Rules of Civil Procedure, but one of these rules, to wit, Rule 1017, effective January 1, 1947, provides:

"(a) the pleadings in an action are limited to a complaint, an answer thereto, a reply if the answer contains new matter or a counterclaim, a counter-reply if the reply to a counterclaim contains new matter, a preliminary objection, an answer thereto, and a motion for judgment on the pleadings . . . (b) Preliminary objections are available to any party and are limited to . . . (4) a demurrer".

A note to the above, however, provides that: "A preliminary objection may be filed to a complaint, answer, reply or counter-reply. Practice under sub-division (b) is similar to the equity practice of raising preliminary objections at one time."

Equity Rule 48 provides, inter alia: "On or before the date fixed for filing an answer on the merits, and thereafter by leave of the court upon cause shown, the defendant may, by answer filed, accompanied by an affidavit that it is not interposed for the purpose of delay, preliminarily object to the bill for one or more of the following reasons: . . . (3) that liability for all the causes of action set forth cannot be asserted against all the material defendants, and no adequate reason appears why those causes should be joined in order to promote the convenient administration of justice; . . . (7) that, for any other reason, defendant should not be required to answer the facts averred, since he has a full and complete defence to plaintiff's claim, specifically stated, which does not require the production of evidence to sustain it."

In the demurrer as filed by the city, it is alleged "that the plaintiff cannot recover from it in this action of trespass for the following reason: First, the City of Greensburg, designated in the complaint as a municipal corporation, is not liable to the plaintiff in this action of trespass for the reason that the negligence of the city set forth in the complaint, consists of acts or omissions to act in the exercise of its police power".

True, the city's demurrer is not accompanied or sustained by an affidavit that it is not filed for the purpose of delay; otherwise it seems to comply with the Rules of Civil Procedure. Plaintiff does not contend, however, that the city's purpose in filing the demurrer is one of delay, but cites Pa. R. C. P. Rule 1026 which provides that "Every pleading subsequent to the complaint shall be filed within twenty (20) days after service of the preceding pleading, . . .", and argues that the court has no discretion in the matter and that the city should not be permitted to demur, but should be compelled to stand on its answer.

Conceding, but not deciding, that the court has no discretion in the matter, and that the order permitting the withdrawal of the answer and the filing of the demurrer was error, we are not convinced that plaintiff can be permitted to recover a verdict at the hands of a jury on the complaint as filed. We are not persuaded that there is any liability on the part of municipal defendant. Plaintiff concedes that in all reason and fairness the parties concerned should not be put to the trouble and expense of a trial if eventually plaintiff cannot recover from the city. With this position we are all in accord and the court is of the opinion that under the pleadings and facts alleged, the city is not liable and plaintiff cannot maintain his action against the municipality. Therefore, with the consent of the parties, we are setting forth our views on the matter and our reasons for believing that the city cannot be held liable to plaintiff herein.

In a note to the case of Charles Gillmor v. Salt Lake City, 12 L. R. A. 537 (N.S.), it is said:

"In municipal corporation law no propositions are more thoroughly established than that police officers are not agents or servants of the municipality employing them, so as to render it responsible for their negligent or illegal acts in discharge of their duties as such officers. These duties do not lie in the line of

the special privileges of a municipal corporation as such; they are not imposed for the purpose of promoting the private interests of municipalities in their special corporate rights. These duties are of a public nature, and such as the state itself is interested in. The appointment of the officers by municpalities is only a convenient mode of exercising a function of government. The detection and arrest of offenders, the preservation of the public peace, the enforcement of the laws, and other powers and duties with which police officers are intrusted, are derived from the law of the state, and not from the municipality employing them. In exercising such powers and duties, they act in reality, and in a wide sense, as state officers, and for the mode in which they so act the municipality cannot be held liable. That the acts complained of were done in an attempt to enforce a municipal ordinance or by-law makes no difference. The authority to enact ordinances and by-laws is delegated to the municipality by the sovereign power of the state, and the exercise of the authority gives to such enactments the same force and effect as if they had been directly passed by the legislature. They are public laws, though of a local and limited operation, and, in their enforcement, police officers act in a public capacity, and not as municipal agents or servants."

Plaintiff concedes that the city is not liable for the negligence of its police and seriously contends that a dog catcher is not a policeman. Perhaps so in the strict or narrow sense of the word, but employes of a city entrusted with a duty of carrying out the police power of the municipality do not always wear a helmet or carry a night stick, neither are they clothed in a blue uniform with brass buttons. The city's liability or its power to act is not governed by the title by which its employe is designated or characterized, nor by the uniform he wears. It depends on the nature and character of the work performed and the authority under which

the municipality is acting, whether a business or revenue producing operation or whether a governmental function. In maintaing a dog pound, the city is operating under its police power. It certainly is not impounding mad dogs as a revenue measure, at least it is not so alleged in the complaint. When enforcing sanitary and health measures, the city is operating under its police power as much as when its officers are apprehending criminals.

In Scibilia v. Philadelphia, 279 Pa. 549, a leading case on the subject, Mr. Chief Justice Moschzisker, quoting from McQuillan on Municipal Corporations said, pages 558 and 559:

" 'The liability or nonliability of a municipality for its torts . . . depends upon the capacity in which the city was acting at the time . . . A municipal corporation is not responsible for the negligent acts of its employees who are endeavoring to carry out the regulations of the city to promote the public health . . . It is not the character or name of the agent who executes the duty of removing the cause of discomfort and ill health to the public which fixes the character of the duty performed, but it is the act itself which determines whether it is governmental or ministerial.' "

The late Judge Keller also throws some light on the subject in Cousins v. County of Butler, 73 Pa. Superior Ct. 86, where he says, pages 88 and 89:

"The State, in administering the functions of government through its appointed agents and officers is not legally liable to a claim in compensatory damages for an injury resulting from misconduct or negligence. That the doctrine of respondeat superior, applicable to the relations of principal and agent, created between other persons, does not prevail against the sovereign in the necessary employment of public agents, is too well settled upon authority and practice to admit of controversy. . . .

"This immunity from liability for the negligence of its officers and agents applies not only to the state itself, but also to agencies or instrumentalities of the state when in the exercise of public or governmental powers or in the performance of public or governmental duties. Thus a city is not responsible for the torts or negligence of a policeman while acting in his official capacity: . . . nor for injuries caused by the negligent driving of a fire engine by an employee of the fire department: . . .

"In all these cases the distinction is drawn between the acts of municipalities and other governmental agencies done or performed in their ministerial or corporate character in the management of property for their own benefit or in the exercise of powers assumed voluntarily for their own advantage, on the one hand, and on the other, those broader functions of government proper, delegated by the state to be performed by certain public instrumentalities. As to the former, the municipality may be held liable for the negligence of its employees and agents; as to the latter, it is invested with the immunity which attaches to the sovereign."

See also the discussion of Mr. Chief Justice Gordon in Ford v. Kendall Borough School District, 121 Pa. 543, and the City of Dallas v. Smith et ux., 107 S. W. (2d) 872, where the municipality was held not liable to parents for the death of a child caused by negligence of the superintendent and other employes of the city's hospital, to which the child was taken for examination and treatment, since the city in its maintenance and operation of the hospital, though a charge was made for the facilities furnished, was exercising a governmental power and was not acting in a proprietary capacity.

To the same effect are:

Loube v. District of Columbia, 92 F. (2d) 473, where it was held by the United States Circuit Court

of Appeals, that "The collection of garbage by the District of Columbia, involved exercise of governmental functions and the District was not liable for injuries sustained by a passenger in a street car, which collided with the garbage truck"; Haight et al. v. Mayor of New York et al., 24 Fed. 93, where the United States district court held that the city was not liable to plaintiff for damages sustained in a collision between a schooner and a steamboat owned by the municipality, but in the exclusive use and control of the Commissioners of Charities and Correction, and while negotiated by a pilot employed by the commissioners, even though the collision was the sole fault of the pilot of the steamer; Maxmillian v. Mayor et al. of the City of New York, 62 N. Y. 160, 13 App. Div. (N. Y.) 246, where it was held that the City of New York was not liable for the negligence of an employe of the Commissioners of Public Charities and Correction while driving an ambulance wagon belonging to the city; Ogg v. City of Lansing, 35 Iowa 495, where it was held that a city is not liable for the negligence of its officers or agents in executing sanitary regulations adopted for the purpose of preventing the spread of contagious diseases or in taking care and custody of persons afflicted with such diseases or the houses in which such persons are kept; Fair v. City of Philadelphia, 88 Pa. 309, where it was held that the city was not responsible for an error by its engineer in the construction of a sewer by reason of which plaintiff's property was damaged.

In Gregg et al. v. Hatcher et al., 125 S. W. 1007, the Supreme Court of Arkansas said, quoting from page 1007:

"Our statutes expressly delegate to municipal corporations the power to prevent the running at large within their corporate limits of certain designated animals, and prescribed impounding as a method they may adopt to enforce such ordinances. . . . The exer-

cise of the power thus conferred upon the municipalities gives to their ordinances the same force and effect as if they had been passed directly by the state Legislature. In such cases they are in the discharge of duties imposed by law for the promotion and preservation of the public welfare, and discharge governmental function. Their officers in the enforcement of their ordinances act in their public capacity. 'The rule is general that a municipal corporation is not liable for alleged tortious injuries to the persons or property of individuals when engaged in the performance of public or governmental functions or duties. So far as municipal corporations exercise powers conferred on them for purposes essentially public, they stand as does sovereignty whose agents they are, and are not liable to be sued for any act or omission occurring while in the exercise of such powers, unless by some statute the right of action is given, and, where the particular matter is purely a matter of public service for the general and common good, it makes no difference whether it is mandatory, or whether only permitted and voluntarily undertaken. A municipal corporation, therefore, is not liable for negligence in the course of work undertaken purely for the public benefit and advantage, and not for the benefit of the corporation. Nor is liability incurred by a city in the exercise of its police power in measures adopted for the general health, comfort, and convenience of the public."

See also Givens v. City of Paris, 24 S. W. 974, where it is said in the syllabus: "A city is not liable for personal injuries sustained through the negligence of a policeman while enforcing an ordinance requiring animals running at large in the streets to be impounded, since the enactment of such an ordinance is an exercise of the police power." In Scibilia v. Philadelphia, supra, the Court said, quoting from pages 560 and 561:

"So far as shown by reported cases, the decisions of the United States Supreme Court and the Courts of ultimate appeal in the majority of States, where analogous questions have been passed on, favor the view here sustained, that the removal of ashes or refuse by a municipality is a governmental function, designed primarily to promote the public health and comfort, and no recovery can be had for negligence in its performance," citing cases.

Plaintiff cites and relies upon Bodge v. Philadelphia, 167 Pa. 492, where it was held that the electrical bureau of the city, which derives a revenue from grants and pays it into the city treasury is not a branch of its revenue producing department and its employes are the servants of the city and the maxim "respondent superior" applies to their acts in conducting their business.

This case is not in point. In the Bodge case, plaintiff was injured by being run over by a team driven by employes of the electrical bureau, which was engaged in the revenue producing business and which paid into the city treasury the sum of $150,000 a year. The electrical bureau was not, therefore, engaged in governmental duties, and in operating it the city was acting in its proprietary capacity, and could not be regarded as exercising the police powers of the municipality.

In Fox v. Philadelphia, 208 Pa. 127, cited by plaintiff, the deceased was crushed by an elevator in the City Hall, which was being used to transport persons to and from the court rooms. The building was constructed under a special act of assembly and the powers and duties of the building commission were clearly defined. The court held that the elevators were necessary for carrying persons to and from different parts of the building and under the management and control of the city in its proprietary capacity, and further held that the city was a common carrier and liable for the injury and at the time of the accident was not exercis-

ing its police powers. We do not consider the case parallel or in point.

Stevens et ux. v. Pittsburgh, 129 Pa. Superior Ct. 5, affirmed in 329 Pa. 496, relied upon by plaintiff, is another case in which the city was held to be exercising its proprietary rather than its governmental functions. In the Stevens case, the city owned, maintained and controlled a park, which was supervised by a force of city employes, under the direction of a foreman. At the time of the negligence, of which complaint was made, a boy, who was standing on a neighbor's lawn near his own home on the opposite side of the street from the park, was shot and killed. A rifle club had obtained a permit from the city and established a range in a certain well defined area in this park. This range was used only on Saturday afternoon and by members of the club and then under the supervision of the club secretary. The shot, which killed the boy, did not come from the rifle range but from a point near the bathhouse some 75 to 100 feet distant. At the time of the shooting the employes of the city were in attendance in the park. The city had constructive notice of long, continued, promiscuous and general shooting in the park by persons, who were not members of the rifle club, but who were in the park with the city's knowledge and upon its implied invitation and permission. It was in testimony that shooting had been going on almost daily in this park for seven to eight years and that shooting took place on other days than Saturday in the presence of four or five attendants, who worked in the park. The court said, quoting from page 19:

"The breach of duty here was not the failure of the city as a sub-division of the state properly to police, as in the street cases, but rather a failure in its proprietary capacity as a landowner to abate a dangerous condition existing upon its property of which it had notice. That the only way to abate the nuisance might incidentally be through the use of its police

officers or other employees does not make the breach of duty essentially a failure to exercise a governmental function."

To the same effect is Honaman et al. v. Philadelphia, 322 Pa. 535, relied on by plaintiff, where Mr. Justice Linn, in delivering the opinion of the court, said, quoting from page 539:

"While immune from liability for negligent conduct in some, though not all, classes of governmental activity, this immunity does not follow breach of duty in its corporate or proprietary capacity. We think the city acts in its corporate or proprietary capacity in maintaining its parks. It is then subject to the same measures of care in the performance of its duties and obligations arising out of ownership as any other person in possession and control of land"; citing cases.

The instant case is distinguishable from the cases cited by plaintiff and in our opinion is not ruled by any of the authorities upon which plaintiff relies. For the reasons heretofore given as well as those more ably and authoritatively expressed in 4 Dillon on Municipal Corporations, 2d ed., secs. 1655 and 1661, 6 McQuillan on Municipal Corporations, 2d ed., secs. 2837, 2838 and 2840, as well as in Pushnack v. Borough of Belle Vernon, 46 D. & C. 317, McDade v. City of Chester, 117 Pa. 414, Doughty v. Philadlephia Rapid Transit Co. et al., 321 Pa. 136, Borough of Norristown v. Fitzpatrick, 94 Pa. 121, Koscelek v. Lucas et al., 157 Pa. Superior Ct. 548, Collins v. Commonwealth, 262 Pa. 572, and Hartness v. Allegheny County, 349 Pa. 248, we are of opinion that at the time of the injuries, of which complaint is made in this case, the municipality was not acting in its proprietary capacity, but was acting within its governmental authority by exercising its police powers, and that plaintiff cannot recover a verdict at the hands of a jury against defendant, City of Greensburg. Under our verbal agreement with plaintiff's counsel, and the law as

above cited, we are further of opinion that defendant, City of Greensburg, should be permitted to demur, and that the demurrer as already filed should be sustained.

Therefore, we enter the following decree:

And now, to wit April 5, 1948, after argument and after due and careful consideration, it is ordered, adjudged and decreed that the demurrer filed to the plaintiff's statement of claim be and the same hereby is sustained.