## Kennedy v. Gamble & Gamble Construction Co.

*Galbreath, Braham, Gregg, Kirkpatrick & Jaffe,* for plaintiffs.

*Henninger & Robinson,* for defendant.

*Marshall, Marshall & McNamee,* for additional defendant.

SHUMAKER, P. J., August 10, 1961.—This matter is before the court on preliminary objections in the nature of a demurrer filed in behalf of the additional defendant to the complaint against the additional defendant.

The South Butler County School District is a school jointure made up of the school districts of the town-

ships of Clinton, Penn, Winfield, Jefferson and the Borough of Saxonburg, all in the southern part of Butler County, which joint school system on July 1, 1953, established the South Butler County School Authority for the purpose of erecting a new Junior-Senior High School on a tract of land situate in Jefferson Township.

The general contract for the construction of said building was awarded by said authority to defendant, Gamble & Gamble Construction Company and, before the building was fully completed, the employes of the joint school system and the public generally were invited to take tours through the new building. These tours were conducted, and the visitors escorted by members of the school board, the authority board and by the project inspector employed by the authority to inspect the work as it progressed.

On March 30, 1958, about 4:30 p.m., a Sunday afternoon, one of the plaintiffs, Ruth S. Kennedy, a teacher in the South Butler County School District, entered the new building and proceeded to look through the building alone, without guide or escort. She entered the auditorium and experienced the misfortune of falling off a platform and sustaining serious injuries thereby.

Charging the contractor with negligence in failing to warn of the danger, in failing to provide a barrier or railing on the platform, and in failing to provide adequate lighting in the auditorium so that persons invited upon the premises might see any existing dangers, the injured school teacher and her husband filed a complaint in trespass against the contractor for her injuries and expenses incurred thereby.

The contractor brought on the record, as additional defendant, the school district, claiming that the school district had sole and exclusive possession of the premises during said inspection tours, and averring

negligence on the part of said school district in bringing about the harm to the injured plaintiff for which plaintiffs now complain.

It is the position taken by the contractor as defendant that the school district is alone and solely liable to plaintiffs or, in the alternative, that the additional defendant is jointly liable with the original defendant or is liable over to it.

The additional defendant, by preliminary objections filed and now before us in the nature of a demurrer, contends that a cause of action is not made out by the complaint of defendant against the additional defendant in that a school district or joint school system as a governmental agency is immune from tort liability when the municipal operation giving rise to plaintiffs' cause of action is governmental in nature. The school district strongly contends that any dominion or control by a school district of a partially constructed school building is a municipal operation which is governmental in nature, thus relieving the school district of liability to plaintiffs in the instant case.

The law has long been well and firmly established in Pennsylvania that a municipality or public agency actively engaged in the performance of a governmental function is immune from liability for negligence in the maintenance of its land or building, or in which the activity is conducted: Hill v. Allentown Housing Authority, 373 Pa. 92 (1953) ; Hartness v. Allegheny County, 349 Pa. 248; Kesman v. Fallowfield Township School District, 345 Pa. 457, and cases cited therein.

It is equally well established that a municipality or public agency is liable in tort for negligence of its servants and employes where the activity conducted by the governmental agency is *proprietary* in nature. Morris v. Mount Lebanon Township School District, 393 Pa. 633 (1958).

The above-stated principles of law apply to the matter of liability of school districts. See cases above cited.

The sole or single question now before us may be very easily and simply stated as follows: Is a school district liable for injuries sustained by one invited to visit and inspect a school building nearing completion, which injuries were brought about through negligently having the premises in a dangerous condition?

The answer may be as simply given: It definitely is liable, if the open-house inspection was a proprietary activity of the school district. Otherwise, if the same was a governmental function.

But this correct answer is utterly meaningless. We must now determine whether open-house inspection of a school building is a proprietary or governmental function of the school district. This is the real issue now before this court. Here, the legal going gets extremely rough and hazardous.

Indeed, the distinction in the law determining tort liability of municipal corporations arising out of the exercise, on one hand, of so-called governmental functions and, on the other, of corporate or proprietary functions have long been in a state of confusion and uncertainty. The decisions on this matter have been more or less arbitrary, and not wholly consistent with one another, perhaps because they have been based primarily on practical consideration of public policy rather than on principle of logic: Honaman v. Philadelphia, 322 Pa. 535.

Perhaps there is no issue known to the law which is surrounded by more confusion than the question whether a given municipal operation is governmental or proprietary in nature: Scibilia v. Philadelphia, 279 Pa. 549.

Two reasons may be assigned therefor: First, the concept of proprietary functions has been viewed

"liberally", and exceptions to the rule of nonliability for the conduct of governmental functions have been created because of judicial recognition that the losses caused by the torts of public employes should be treated, as in other cases of vicarious liability, as cost of governmental administration; second, the tests yet devised for distinguishing between governmental and proprietary functions have proven unsatisfactory.

In general, and perhaps unhelpfully, it has been said that if a given activity is one which a local government unit is not statutorily required to perform, or if it may also be carried on by private enterprise, or if it is used as a means of raising revenue, the function is proprietary: Morris v. Mount Lebanon Township School District, supra.

In the case just cited, the Supreme Court of Pennsylvania recognized the perplexing and troublesome problem by the use of the following language:

"The doctrine of sovereign immunity and its application to local government law need not detain us here. The errors of history, logic and policy which were responsible for the development of this concept have been clearly exposed, and thoroughly criticized. Nevertheless, the solution of the problem of government responsibility in tort is too complex an undertaking to permit the partial and piecemeal judicial reform which the plaintiff seeks. Establishment of a comprehensive program by legislation applicable to the Commonwealth and to all of its sub-divisions is sorely needed to deal effectively with tort claims arising out of the conduct of governmental activities": (page 635)

This court finds no reported cases directly in point on the problem before us whether the inspection of a partially constructed school building is a governmental or proprietary function and must, therefore, blaze a trail through this legal wilderness.

We start out with the proposition that the function of a school district is basically and fundamentally that of "knowledging the young," and only a few short years ago it consisted of literally pounding the 3 R's into the craniums of youth.

Modern concepts of education and usage, and the School Code of Pennsylvania, Public School Code of March 10, 1949, P.L. 30, art. II, secs. 211, 217, 24 PS §§2-211, 2-217, have broadened this governmental function so that today public education involves instructions in every field, competitive sports of all types, school entertainments, social events, and the maintenance of shops for the teaching of all trades.

Within the course of a few short years, our one-roomed school buildings have been replaced, as in the case at bar, with ultra-modern jointure buildings, the last word in architectural design and planning at great cost to the taxpayers, and over which there has been much debate and serious controversy.

School buildings are public buildings, and parents and taxpayers generally are at liberty to visit the school buildings, inspect them, and determine from genuine interest or idle curiosity what facilities are available to the children in the district or what the tax dollar, the bonded indebtedness, and increased millage have provided.

It would, therefore, appear that permitting school visitation by those not actually enrolled, i.e., by tax-paying, voting parents, is governmental and part of school business.

Parent-teachers associations, known as PTA's, have appeared on the educational horizon in relatively recent years. They play important and necessary roles in our modern education world. Not only do they foster and develop better child understanding by both parent and teacher, but they solicit and stimulate a greater

interest of the parents in the school program, policies, and facilities. Community interest and support of schools inures to the welfare and benefit of the school districts in a very valuable and material way. Tax dollars are saved by donations of equipment, facilities, decorations and funds. Today, home and community school support are vital to school business, and to foster and encourage the same are governmental functions and not proprietary activities. Although not statutorily required, community school support is essential to all school systems today and without it the teaching of the young would be impeded.

To reduce to a minimum ultra confusion and disruption of class room teaching and school activities which would exist if adults ran rampant through the buildings during school hours, the modern open-house policy has been established whereby school visitation and inspection is had all at one time, and tours are provided and guides supplied with informative instructions. Some school sessions are even held at night so that working parents may see the institution in operation and witness their child's class room attitude and participation.

Having the inspection of the South Butler County Joint High School prior to moving into the new building and the full scale occupancy thereof would appear definitely as a governmental function to make more efficient and effective the training school hours once the pupils had been transferred to the new educational quarters.

By hindsight, we may properly conclude that the open house was premature or untimely held prior to final completion or until the building was turned over to and accepted by the Authority and School District from the contractor, but it is not our function or duty to pass upon the judgment exercised. We are only called upon to label the type of function being per-

formed in showing the building to the teachers, parents, and citizens of the district prior to occupancy for purely class room teaching and recognized school activities.

We conclude, therefore, that the preliminary objections filed are well taken, for the reason that the School District is immune from liability for the negligence of its servants and employees which might have existed in this case.

There is no allegation or averment in the complaint against the additional defendant that the school district was maintaining a known public nuisance which might remove the immunity.

### Order

And now, August 10, 1961, the preliminary objections filed in behalf of the additional defendant are sustained and the additional defendant is hereby removed as additional defendant.